**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas J. HENSLEY, Defendant-Appellant.**

**No. 82–5669.**

United States Court of Appeals, Sixth Circuit.

Argued March 31, 1983.

Decided Aug. 9, 1983.

Rehearing and Rehearing En Banc Denied Dec. 15, 1983.

Edward G. Drennen, II (argued), Florence, Ky., Ct.Appt., for defendant-appellant.

Louis DeFalaise, U.S. Atty., James E. Arehart, Asst. U.S. Atty. (argued), Lexington, Ky., for plaintiff-appellee.

Before MERRITT and MARTIN, Circuit Judges, and PORTER, Senior District Judge.*

MERRITT, Circuit Judge.

In this criminal case, defendant Thomas J. Hensley appeals his conviction under an indictment charging possession of a firearm by a convicted felon in violation of 18 U.S. C.App. § 1202(a)(1). Hensley maintains that his conviction rests on evidence obtained through an illegal search by officers of the Covington, Kentucky Police Department. We agree, and therefore reverse the conviction.

On December 10, 1981, Officer Kenneth Davis of the St. Bernard, Ohio Police Department interviewed a woman named Janie Hansford regarding the armed robbery that had occurred six days earlier at the Moon Tavern in St. Bernard. Having been informed of her rights, Hansford gave the officer a detailed handwritten statement that implicated Hensley in the robbery. Specifically, she stated that she had accompanied her boyfriend, Alan Pfeiffer, to the Moon Tavern in the early morning hours of the day of the robbery and had ascertained the time that the establishment opened for business. She stated further that shortly after the robbery, Sonny Pfeiffer (Alan's brother) told her that he and one "Dale" had robbed the tavern, and that defendant Hensley had driven the getaway car.

---

* The Honorable David S. Porter, Senior District Judge for the Southern District of Ohio, sitting by designation.

Hansford also recalled that Sonny Pfeiffer showed her some money that he claimed to have obtained in the robbery.

Although Officer Davis did not believe that he had probable cause to arrest Hensley, he nevertheless issued a flyer for circulation to neighboring police departments, requesting that Hensley be stopped "for investigation only" of the Moon Tavern robbery.[1] In response to this flyer, Officer Daniel Cope of the Covington, Kentucky Police Department stopped Hensley while the latter was driving his car within the Covington city limits. Knowing that Hensley was wanted in connection with an aggravated robbery, Officer Cope drew his gun and ordered the defendant and his passenger (and eventual co-defendant) Albert Green to step out of the car and place their hands on the trunk until a backup unit arrived. Officer Cope testified that he felt his life "was in jeopardy at the time of the stop." (Tr. 5/28/82 at 15.) The officer also testified that he intended to detain Hensley and Green only to determine whether or not there was a warrant for Hensley's arrest. In the absence of a warrant, Officer Cope intended to release Hensley. (Tr. 5/13/82 at 9.)

When Officer David Rassache arrived, he looked through the car door that Green had left open and saw the butt end of a gun protruding from under the seat. Proceeding to search the entire vehicle, the officers discovered two more firearms, and subsequently placed both Green and Hensley under arrest.

▉ Hensley argues that the police acted illegally in stopping him and searching his car, and that the weapons seized from the car should therefore have been suppressed. We have no doubt—and the government does not contest—that the encounter between the Covington police officers and the appellant constituted a Fourth Amendment event.[2] By pulling Hensley over, ordering him out of the car, and holding him at gunpoint, Officer Cope effected a "seizure" of Hensley's person within the meaning of the Amendment. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968), the Supreme Court observed:

> It is quite plain that the Fourth Amendment governs "seizures" of persons which do not eventuate in a trip to the station house and prosecution of crime—"arrests" in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person.

*See also Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Under the general rule governing Fourth Amendment settings, "every arrest" and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." *Michigan v. Summers, supra,* 101 S.Ct. at 2593; *see also Dunaway v. New York,* 442 U.S. 200, 207–09, 99 S.Ct. 2248, 2253–2254, 60 L.Ed.2d 824 (1979). We therefore begin our analysis of the instant case by considering whether the Covington police had probable cause to arrest Hensley *before* Officer Rassache saw the weapon in the appellant's car.

The District Court concluded that Janie Hansford's statement actually provided the St. Bernard police with a sufficient basis for probable cause, under the standards

---

1. In its entirety, the flyer reads as follows:
   "Wanted for Investigation Only for Aggravated Robbery"
   Wanted for Investigation of Aggravated Robbery which occurred at the Moon Tavern, 631 Vine Street, St. Bernard, Ohio on December 4, 1981 at 6:19 a.m., is one Thomas James Hensley, M/W—1/18/44, CTL No. 21528, PICA # 325, SS—295366974, SFF, 190 lbs. Subject LKA as of 12–7–81 was Drake Motel. If subject is located pick up and hold for St. Bernard Police. Use caution and consider subject armed and dangerous.

2. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., Amend. IV.

enunciated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *United States v. Garrett,* 627 F.2d 14 (6th Cir.1979). Hensley, however, notes that Officer Davis, who interviewed Hansford, did not believe that her statement provided grounds for the probable cause necessary to secure a warrant for Hensley's arrest. Hence, the St. Bernard police did not obtain such a warrant, and sought Hensley "for investigation only."

█ We agree with Hensley that even if the St. Bernard police did in fact have probable cause, this fact alone would not endow their Covington counterparts with probable cause to make a full-fledged, warrantless arrest. The Supreme Court has held that "the standards applicable to the factual basis supporting the officer's probable-cause assessment at the time of the challenged arrest and search are at least as stringent as the standards applied with respect to the magistrate's assessment of the same issue." *Whiteley v. Warden,* 401 U.S. 560, 566, 91 S.Ct. 1031, 1036, 28 L.Ed.2d 306 (1971). The Covington police officers—who were wholly ignorant of the specific information provided by Hansford—clearly lacked probable cause to arrest Hensley when Officer Cope pulled him over. As the officer testified, Hensley was detained only because the Covington Police Department was attempting to verify the existence of an arrest warrant. Although this Court has upheld the general rule that probable cause for arrest may emanate from collective police knowledge, *see United States v. Calandrella,* 605 F.2d 236, 246 (6th Cir.1979), *United States v. Killebrew,* 594 F.2d 1103, 1105 (6th Cir.1979), *United States v. McManus,* 560 F.2d 747, 750–51 (6th Cir.1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 798 (1978), these cases all considered the collective knowledge of police officers who were directly involved in the investigations that prompted the various arrests. In the instant case, by contrast, there was no such direct investigative relationship between the two police departments; absent an arrest warrant, the Covington police knew that they would have to release Hensley. We refuse to extend the "collective knowledge" rule to circumstances where the degree of police cooperation is so attenuated.

Moreover, we do not believe that the Covington officers' knowledge of the flyer asking that Hensley be stopped "for investigation only" would justify the Covington police in concluding that a warrant existed for his arrest. These circumstances distinguish the case from *United States v. McDonald,* 606 F.2d 552 (5th Cir.1979), where the court held that the combination of an FBI "wanted" flyer and a National Crime Information Center printout showing an outstanding arrest warrant gave police officers probable cause to arrest a suspect. On the contrary, the flyer in the instant case plainly indicated that no arrest warrant had been obtained.

Our inquiry, however, does not end here. The Supreme Court has recognized certain instances where the police may legally seize a person while lacking probable cause to arrest for a crime. In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court considered seizures stemming from the "necessarily swift [police] action predicated upon the on-the-spot observations of the officer on the beat," and held that in order to justify "the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 20, 21, 88 S.Ct. at 1879–1880. Under this rule, the *Terry* Court upheld the "stop and frisk" of an individual who seemed to be about to commit a robbery. In *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) the Court extended the *Terry* rationale to an investigative stop based on an informant's report rather than on a police officer's own observations. In *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), the Court recognized another exception to the probable cause requirement by permitting border patrols to detain vehicles that they suspected of containing illegal aliens. Carefully circumscribing this exception, the Court empha-

sized that the patrols could detain the driver and passengers of such vehicles only briefly, and could question them only for the purpose of enforcing the immigration laws. *Id.* at 881–82, 95 S.Ct. at 2580–2581. Finally, in *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the Supreme Court approved the detention of the occupant of a house while police searched the house pursuant to a warrant, even though the police lacked probable cause to arrest the individual before the search.

Despite the expansive trend embodied in this line of cases, the recent case of *Florida v. Royer,* —— U.S. ——, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) demonstrates that the Court still considers the investigative stop a narrowly drawn exception to the rule that police must have probable cause to make a seizure. *Royer* involved the detention at Miami International Airport of a traveler who fit the "drug courier profile" that law enforcement officers use to detect individuals engaged in illegal narcotics traffic. The Court held that the questioning of the traveler in a small room by two officers amounted to an arrest without probable cause, and that this conduct was too intrusive to constitute a legitimate investigative stop under *Terry* and its progeny.

Using the guidance supplied by these cases, we must determine whether, under the Fourth Amendment, the Covington police officers could validly stop Hensley solely because of the St. Bernard Police Department's flyer requesting that he be detained "for investigation only." The government points out that in *United States v. Hernandez,* 486 F.2d 614 (7th Cir.1973), the court upheld an investigative stop by an officer who had received a radio bulletin concerning a vehicle suspected of carrying illegal aliens. Although the bulletin did not provide the officer with probable cause to arrest, the court decided that *Terry* and *Adams v. Williams, supra,* afforded the officer the opportunity to stop the vehicle and "attempt to corroborate the bulletin." *United States v. Hernandez, supra,* 486 F.2d at 617.

Although there is some similarity between *Hernandez* and the facts present here, certain distinctions between the two cases prevent us from following the Seventh Circuit in this instance. While the radio bulletin in *Hernandez* apparently described very recent events and led to prompt police action, the St. Bernard Police Department's flyer in the instant case concerned a robbery that was already nearly a week old when the flyer was issued and nearly two weeks old when the Covington police finally stopped Hensley. Thus, the police officer in *Hernandez* had reason to believe that he was investigating an ongoing crime, whereas Officer Cope, on the other hand, had absolutely no reason to believe that Hensley was committing any crime at the time of the stop.

The significance of this distinction lies in the Fourth Amendment principle that exigent circumstances will sometimes permit a police officer to skirt the Amendment's warrant requirements in order to prevent the commission of a crime or the escape of a suspected felon. *See Terry v. Ohio, supra,* 392 U.S. at 20, 88 S.Ct. at 1879; *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (police officer in hot pursuit of suspect not required to obtain search warrant). Indeed, the rationale for the *Terry* line of cases discussed above stems from the Supreme Court's recognition of the need for police conduct that is "necessarily swift action predicated upon the on-the-spot observations of the officer on the beat." *Terry v. Ohio, supra,* 392 U.S. at 20, 88 S.Ct. at 1879. In the case at bar, however, the government has not shown us any such "exigent circumstances" that would have justified the Covington police in stopping Hensley.

Furthermore, in *Hernandez,* the officer knew that the vehicle he stopped was thought to contain illegal aliens. His intrusion on the suspect's privacy was limited to the specific purpose of verifying or dispelling "the suspicion that the immigration laws were being violated," *Florida v. Royer, supra,* 103 S.Ct. at 1324 (discussing *United States v. Brignoni-Ponce, supra* ), and the stop was "likely to resolve the matter one

way or another very soon ..." *Michigan v. Summers, supra,* 452 U.S. at 701 n. 14, 101 S.Ct. at 2594 n. 14 (quoting 3 W. LaFave, Search and Seizure § 9.2 p. 40 (1978) ). Officer Cope, however, had much less specific information. He knew only that Hensley was wanted for questioning in connection with a certain robbery. The St. Bernard flyer contained no information regarding Hensley's purported role in the robbery, and thus contained no "specific and articulable facts" that would have justified the stop.

The government maintains, however, that the flyer provided sufficient justification for stopping Hensley while the Covington police determined whether or not there was a warrant for his arrest. In view of the Supreme Court's clear intention to restrict investigative stops to settings involving the investigation of ongoing crimes, we refuse to expand the *Terry* doctrine to encompass police attempts to round up people against whom arrest warrants *may* have been issued. This "arrest now, verify warrant later" policy that the government urges us to uphold simply stretches the constraints of the Fourth Amendment beyond all reasonable limits.

In conclusion, we hold that the Fourth Amendment does not permit police officers in one department to seize a person simply because a neighboring police department has circulated a flyer reflecting the desire to question that individual about some criminal investigation that does not involve the arresting officers or their department. Because appellant Hensley's conviction rests on evidence obtained through an illegal arrest, his conviction must be reversed.