UNITED STATES of America,
Plaintiff–Appellee,

v.

Elmer PERKINS, Defendant–Appellant.

No. 92–5941.

United States Court of Appeals,
Sixth Circuit.

Argued May 3, 1993.

Decided May 24, 1993.

Robert F. Trevey, Asst. U.S. Atty. (argued and briefed) and Karen K. Caldwell, U.S. Atty., Office of the U.S. Atty., Lexington, KY, for plaintiff-appellee.

John T. Aubrey (argued and briefed), Manchester, KY, for defendant-appellant.

Before: MILBURN, RYAN, and NORRIS, Circuit Judges.

MILBURN, Circuit Judge.

Defendant Elmer Perkins appeals from a judgment of the district court wherein he was convicted of conspiracy to possess mari-

juana with intent to distribute it, a violation of 21 U.S.C. § 846, and possession of marijuana with intent to distribute it, a violation of 21 U.S.C. § 841(a)(1). On appeal, defendant Perkins contends that the district court erred in failing to suppress evidence seized during the search of a truck, erred in denying his motion for a bill of particulars, and erred in concluding at sentencing (1) that he was an organizer or leader in the conspiracy, and (2) that he had possession of a firearm during the offense. For the reasons that follow, we affirm.

## I.

During the latter part of August 1991, Billie Jean Berry advised Special Agent Phil Sheets, Federal Bureau of Investigation, that defendant and James A. Hibbard had approached her for the purpose of gaining her assistance in distributing marijuana they held for sale. Agent Sheets asked Berry to cooperate with the authorities, and he relayed the information she provided to the Kentucky State Police. On or about August 29, 1991, Berry and Hibbard, with Agent Sheets' knowledge, transported 7 pounds of marijuana to North Carolina and sold it for $750. In early September, Berry met with Hibbard and Perkins and discussed selling another 40 pounds of marijuana. They informed Berry that the marijuana was being stripped (the leaves were being stripped from the stalks) and that the shipment would be ready to move out on the following day. Berry relayed this information to Agent Sheets on September 8, 1991, and the next day, on September 9, 1991, Agent Sheets fitted Berry with a concealed radio transmitter that would allow him to hear her conversations.

In the meantime, and based upon information provided by Agent Sheets, the Kentucky State Police had begun an investigation centered on a barn in the Little Goose Creek area. On September 4, 1991, Sergeant Hucklebe and Detective Turner inspected the barn. A short distance down a well-worn path leading from the barn, Detective Turner discovered a pile of marijuana stalks that had been stripped of their leaves. Again, on September 7, 1991, Sergeant Hucklebe and Detective Turner returned to the barn to continue their investigation. They found that the pile of stripped marijuana stalks had increased significantly in size. They also discovered a 250–gallon fuel tank on the path between the barn and the pile of marijuana stalks. This had not been present during their earlier visit on September 4, 1991. Detective Turner examined the tank, discovering that it had been modified with a false bottom which contained a residuum of marijuana leaves.

Pursuant to her earlier arrangements with Hibbard and Perkins, Berry, wearing the radio transmitter provided by Agent Sheets, drove to the barn located in the Little Goose Creek area on September 9, 1991. She met Hibbard on the road a short distance from the barn, and as he drove up to her car she transmitted to Agent Sheets the license plate number, color, and make of the blue Chevrolet S–10 pickup truck Hibbard was driving. Agent Sheets relayed this information to the Kentucky State Police who had rendezvoused nearby at the Manchester Shopping Center to intercept any drug shipment.

Hibbard and Berry, each in a separate vehicle, began the trip to North Carolina, Hibbard leading in the pickup truck. After traveling a few miles, Hibbard was stopped by Kentucky State Police who searched the white tool box in the bed of his truck and discovered approximately 41 pounds of marijuana. In the locked glove compartment, officers found a loaded .38 caliber revolver. The search occurred at about 3:45 p.m. on September 9, 1991.

Following Hibbard's arrest, officers drove to the barn in the Little Goose Creek area. As they approached the barn on a narrow access road, they observed a blue pickup truck being driven by defendant Perkins. Perkins and another occupant of the truck were detained while several officers ran to the barn. There they found six adults and two juveniles sitting in a circle cutting the leaves from the marijuana stalks with scis-

sors.[1] Officers recovered another 14 pounds of marijuana at the barn.

The blue pickup in which defendant Perkins was found and a yellow pickup truck located near the barn were registered to defendant Perkins, as was the Chevrolet S–10 pickup truck driven by Hibbard. The revolver in the glove compartment of the Chevrolet S–10 also belonged to defendant Perkins.

Defendant Perkins was indicted for and found guilty by a jury of conspiracy to possess marijuana with intent to distribute it and possession with intent to distribute marijuana. Prior to the trial, defendant filed a motion to suppress the evidence seized from the Chevrolet S–10 pickup truck driven by Hibbard. The district court adopted the report and recommendation of the magistrate judge and denied the motion. The district judge also denied defendant Perkins' motion for a bill of particulars.

Defendant was sentenced on July 13, 1992, receiving a 51–month term of imprisonment on Counts I and II. This timely appeal followed.

## II.

### A.

■ Defendant Perkins argues that the district court erred in overruling his motion to suppress the marijuana and the revolver taken from the Chevrolet S–10 pickup truck driven by Hibbard. Perkins argues that the officers lacked probable cause to search the vehicle, in part because Billie Jean Berry was not shown to be a reliable informant. He also argues that the warrant requirement should not be excused in this case because the officers had time enough in which to obtain a search warrant. The district court concluded that probable cause and exigent circumstances existed so as to justify the search without a warrant. This court will not disturb a district court's factual findings unless clearly erroneous, but it reviews a district court's legal conclusions de novo.

United States v. Sangineto–Miranda, 859 F.2d 1501, 1512 (6th Cir.1988).

In California v. Acevedo, — U.S. —, —, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991), the Supreme Court held that officers may search containers within an automobile if they have probable cause to believe those containers contain contraband or evidence. Probable cause is determined from the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983).

Collectively, the officers in this case had ample probable cause to stop and search the vehicle being driven by Hibbard. Billie Jean Berry, the informant, was an insider in the criminal organization in that the conspirators treated her as a coconspirator. As such, she had knowledge of Perkins' and Hibbard's plans, and she relayed this information to Agent Sheets who in turn relayed it to the Kentucky State Police. Thus, police officers had good information about Hibbard's and Perkins' intentions to transport marijuana to North Carolina on September 9, 1991. When Hibbard met Berry near the barn and Berry broadcast a description of his vehicle, the officers received the information they needed to guide their search and seizure. Berry's purpose for being at the barn on September 9, 1991, was to accompany Hibbard in the delivery of marijuana to North Carolina. They had made plans to that effect, and Berry had relayed those plans to Agent Sheets. When Hibbard arrived and announced, "[L]et's get the show on the road," Hibbard J.A. 182, Berry knew his truck must be loaded for the delivery. When she broadcast the description of the truck involved, police officers had probable cause to believe that truck would be carrying contraband.

Defendant Perkins attempts an attack on Berry's reliability as an informant, arguing that under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the government was required to demonstrate the informant's

---

1. The six adults subsequently pled guilty to various criminal charges based on their conduct and

testified for the government at trial.

basis of knowledge for the information she relayed as well as her credibility.

As the Supreme Court has explained, however,

these elements should not be understood as entirely separate and independent requirements to be rigidly exacted in every case.... Rather, as detailed below, they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

*Gates,* 462 U.S. at 230, 103 S.Ct. at 2328.

Agent Sheets had every reason to believe that Berry's information was reliable and that she was a credible person. First, she voluntarily approached him with evidence of criminal activity. She provided information concerning the use of a barn in the Little Goose Creek area, and on two separate occasions this information was corroborated when, during inspections of the barn and its surroundings, police officers discovered a pile of stripped marijuana stalks and a large fuel tank with a false bottom containing marijuana residue. From these corroborations of Berry's information, law enforcement officials had good reason to believe that she was well placed inside a drug trafficking organization, that she was informed of its plans, and that she was truthfully relaying these to the authorities. This case, therefore, has nothing in common with those in which police must decide whether to act on the uncorroborated tip of an unknown informant. Here, the informant was known, she explained the basis of her information, and the information she gave was independently corroborated by the police. *See Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959).

Defendant Perkins points out, however, that much of this information was not available to the magistrate judge or district court in passing on defendants' motion to suppress because only Detective Ronnie Turner testified at the suppression hearing. He had not himself dealt directly with Billie Jean Berry and had only heard indirectly that Agent Sheets had a reliable informant operating in

the criminal organization. Thus, Perkins argues, Detective Turner did not and could not provide the magistrate judge with any information concerning Berry's reliability or credibility. Because neither Agent Sheets nor Billie Jean Berry testified at the suppression hearing, the court could not directly explore the confidential relationship between them. However, it did learn from Detective Turner that the Kentucky State Police officers executing the search knew that a confidential informant was relaying information and that the conspirators were preparing to move a large load of marijuana on September 9, 1991. Shortly before Hibbard was stopped and searched, Kentucky State Police officers met at the Manchester Shopping Center, and there Detective Turner learned about the informant.

At that time I was informed about the informant and that this informant had been involved before with Special Agent Phil Sheets and was reliable. I don't have that specifically in my notes, that's from my memory.

Hibbard J.A. 53.

Moreover, at the trial of this case, both Agent Sheets and Billie Jean Berry testified. They explained the full extent of their confidential relationship, detailing the information Berry supplied to Agent Sheets concerning the conspiracy and its progress. This court has held generally that it is "not restricted to considering evidence offered during the hearing on the motion to suppress," *United States v. McKinney,* 379 F.2d 259, 264 (6th Cir.1967), and thus it may consider evidence offered during the trial of a case as it may bear on the question of probable cause. This rule is not unique to this circuit. *See United States v. Longmire,* 761 F.2d 411, 418 (7th Cir.1985) ("[E]vidence adduced only at trial may be used to sustain the denial of a motion to suppress."); *United States v. Smith,* 527 F.2d 692, 694 (10th Cir.1975) ("[W]e are not limited to a consideration of just the evidence introduced at the hearing on the motion to suppress."); *United States v. Canieso,* 470 F.2d 1224, 1226 (2d Cir.1972) ("It is settled law that the validity of an arrest or search can be supported by evidence which was adduced at trial even though this was not

presented at the pretrial suppression hearing.").

Considering the evidence presented at trial, we conclude that probable cause existed as a matter of the collective knowledge of all the officers and agents engaged in investigating this case. Agent Sheets, for example, knew all about the reliability and credibility of his informant, Billie Jean Berry. The Kentucky State Police officers had verified her information concerning the existence of a conspiracy to process and transport marijuana by observing the discarded marijuana stalks and the modified fuel tank. This court recognizes the general rule that "probable cause for arrest may emanate from collective police knowledge...." *United States v. Hensley,* 713 F.2d 220, 223 (6th Cir.1983) (collecting cases), *rev'd on other grounds,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The collective knowledge of all of these police officers and special agents, who were directly involved in the investigation that led to the search in question, provided ample probable cause to justify the search. Under these circumstances, there is no error in the district court's conclusion that probable cause existed to search the vehicle being driven by Hibbard, including its tool box and glove compartment. *Acevedo,* —— U.S. at ——, 111 S.Ct. at 1991.

### B.

■ Defendant Perkins also argues that exigent circumstances did not exist to justify a warrantless search, even on probable cause. The facts in this case, however, show that there was insufficient time within which to obtain a search warrant. Police officers did not know what vehicle to search because the informant, Billie Jean Berry, did not know what vehicle Hibbard would be driving until she met him near the barn on September 9, 1991. She immediately broadcast a description of this vehicle to Agent Sheets, who relayed it to the Kentucky State Police. By that time, Hibbard and Berry were in motion in their respective vehicles, and there was no further time available within which to obtain a warrant.

Defendant argues that Detective Turner's suppression hearing testimony establishes that he knew the identity of the vehicle to be used by Hibbard early enough to have obtained a search warrant. Detective Turner's testimony, however, does not precisely show when he knew that a blue Chevrolet S–10 pickup truck was the target of the forthcoming search. He testified that the search team met at the London police station about 2:00 p.m. and "took off" for Manchester with "no time to spare." Thus, it is unclear whether he had a vehicle description accurate enough to secure a search warrant before Berry broadcast the actual description.

Defendant Perkins' reliance on *United States v. Chuke,* 554 F.2d 260 (6th Cir.1977), is misplaced. In *Chuke,* an informant provided a tip which police corroborated. Although thus armed with probable cause, police then waited over eight hours for the suspect to leave his hotel room before arresting and searching him. This court found that there had been time to obtain a warrant but affirmed because the exigent circumstances justified the search. In the present case, however, police officers did not have probable cause to search a particular vehicle until their informant identified the particular vehicle being used to transport the marijuana. At that point there was insufficient time within which to obtain a search warrant.

> [W]e know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment.

*Cardwell v. Lewis,* 417 U.S. 583, 595, 94 S.Ct. 2464, 2471, 41 L.Ed.2d 325 (1974).

Defendant also argues that the exigent circumstances justifying the warrantless search of the Chevrolet S–10 truck in question were not presented to the magistrate judge at the suppression hearing, in that only Detective Ronnie Turner testified at that hearing. As has already been pointed out in our discussion on probable cause, a district court's decision not to suppress evidence may be bolstered by testimony occurring during the trial of the case. In this case, Billie Jean Berry's trial testimony that she did not know which vehicle would be used to transport the

marijuana until Hibbard met her near the barn establishes that the police officers, although they were poised and ready to make an interception, did not know what vehicle to intercept until shortly before they acted. The entire record thus establishes that exigent circumstances existed, and therefore a warrantless search on probable cause was justified. *Carroll v. United States,* 267 U.S. 132, 158–59, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925).

## C.

■ Defendant Perkins further argues that the district court erred in denying his motion for a bill of particulars. In his motion, defendant had asked for particulars of the overt acts of the conspirators, the date and places where they were performed, the names of any unindicted coconspirators, and the names and addresses of any informants. On appeal, defendant's argument centers on Billie Jean Berry and her testimony, particularly that which implicated defendant Perkins in the delivery to a buyer in North Carolina of 7 pounds of marijuana on or about August 29, 1991. A district court's ruling on a defendant's motion for a bill of particulars lies within the sound discretion of the court and will not be disturbed on appeal absent an abuse of discretion. *United States v. Patrick,* 965 F.2d 1390, 1400 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 376, 121 L.Ed.2d 287 (1992), *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 1378, 122 L.Ed.2d 754 (1993).

Ordinarily, a defendant is not entitled to a list of the names and addresses of the government's witnesses. Rule 16, Federal Rules of Criminal Procedure. Insofar as Berry was an ordinary witness testifying at trial, the government was entitled to keep her name and whereabouts private. Insofar as she was an informant, however, defendant Perkins argues that disclosure of her identity was required by the rule in *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957), wherein the Supreme Court, in deciding a case in which defendant sought disclosure of the identity of a confidential informant who never testified, held that a district court's decision on the question

of disclosure must be made on a case-by-case basis.

> We believe no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.*

As defendant Perkins admits in his brief, the situation in this case is unlike that in *Roviaro* because Billie Jean Berry appeared and testified at defendant's trial. Brief of Appellant at 29. This distinction has been considered an important one by several courts. For example, in *United States v. Foster,* 815 F.2d 1200, 1203 (8th Cir.1987), the informant testified at trial against defendant. The court found it "highly significant" that the informant

> testified at length and was subjected to extensive cross-examination regarding his relationship with [defendant], the circumstances of [defendant's] crimes, and the specifics of his role as a government informant. [Defendant] had a full opportunity to question [the informant] about entrapment-related conduct and any other relevant matters. At no time did [defendant] request a continuance, an opportunity to *voir dire* [the informant], or any other relief upon learning [the informant's] full identity. In addition, there is nothing to indicate that [defendant] would have done anything different to affect the result at trial had an earlier disclosure been made. We thus find that the district court did not err in declining to permit an earlier disclosure of [the informant's] identity.

To the same effect is *United States v. Pennick,* 500 F.2d 184, 186–87 (10th Cir.), *cert. denied,* 419 U.S. 1051, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974), in which the Tenth Circuit held that, where the informant testifies, the government need not have disclosed his identity prior to trial.

The significant difference between *Roviaro* and the instant case is that in the former the informer did not testify at trial, and in our case he did. Such ruled out the possibility that the informer's testimony could somehow be helpful to [defendant]. And there is nothing in the record to indicate prejudice resulting from the failure of defense counsel to be earlier apprised of the informer's identity. Government counsel in his opening statement identified by name his witnesses, revealing at the time the name of the informant. The informant then was called as the Government's first witness and was cross-examined in great detail. There is nothing in the record to indicate that counsel was in anywise taken by surprise. There was no request for any continuance. Under the circumstances, we find no persuasive reason to depart from the aforementioned general rule that in a case of this type the Government need not disclose prior to trial the identity of any of its witnesses.

*Id.* 500 F.2d at 187.

As in *Pennick*, the government identified Berry by name in its opening statements. She was then called as a witness and subjected to extensive cross-examination. Defendant did not object to her testimony or request a continuance on grounds of unfair surprise. Under these circumstances, the district court did not abuse its discretion in denying defendant Perkins' motion for a bill of particulars. Defendant was no more unfairly surprised by the testimony of Billie Jean Berry than he would have been by the testimony of any other government witness whose name had not been divulged to him prior to trial. In this connection, we would point out that during oral argument, counsel for Perkins admitted that he did not object to Berry's testimony and did not request a recess or continuance when she was called as a witness. Thus, Perkins has not shown that he was prejudiced in any way by Berry's testimony.

### D.

■ In his reply brief, defendant argues for the first time that a material variance between indictment and proof occurred at his trial in that the indictment alleges acts done in Laurel and Clay Counties in Kentucky, whereas the proof showed acts occurring in North Carolina as well as Laurel and Clay Counties. According to defendant, this supposed variance, to which he never objected, illustrates the district court's abuse of discretion in denying defendant's motion for a bill of particulars which would have disclosed that an overt act occurred in North Carolina. Issues raised for the first time in a reply brief are not properly before this court. *Pachla v. Saunders Systems, Inc.*, 899 F.2d 496, 502 (6th Cir.1990); *Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir.1986). Moreover, the argument is without merit where the North Carolina activity was a minor part of the government's overwhelming proof in this case.

### E.

■ Defendant Perkins also argues that the district court erred in increasing his base offense level by four levels on the grounds that he was an organizer or leader of the criminal activity within the meaning of United States Sentencing Guidelines ("U.S.S.G.") § 3B1.1. This court will not disturb a district court's findings of fact in respect of sentencing unless the findings are clearly erroneous. *United States v. Brown*, 946 F.2d 1191, 1196 (6th Cir.1991); 18 U.S.C. § 3742(e).

The commentary to section 3B1.1 lists some of the considerations appropriate to the district court's determination of a defendant's role in an offense.

Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

U.S.S.G. § *3B1.1,* comment. (n. 3). There is evidence from which the district court could conclude that defendant Perkins was certainly an organizer of the criminal activity in this case. He met with Hibbard and Berry to plan the shipment of marijuana in this case, his vehicle and gun were used in the transportation, two other vehicles registered to him were found at or near the barn where other lower ranking conspirators were engaged in the stripping process, and several of these lower ranking conspirators testified that defendant Perkins drove them to work and paid their wages. One of these persons, Rudolph Hill, testified that Perkins hired him for the job of stripping marijuana for $6.00 an hour. He also testified that it was defendant Perkins who modified the fuel tank to conceal marijuana during transportation. In light of this evidence, the district court did not err in finding that defendant Perkins was an organizer or leader within the meaning of U.S.S.G. § 3B1.1 and in enhancing his sentence accordingly.

■ Defendant Perkins' final argument is that the district court erred in enhancing his sentence by increasing his base offense level by two levels under U.S.S.G. § 2D1.1(b)(1) on the grounds that a dangerous weapon was possessed during the commission of the offense. Of course, it was defendant Hibbard, not Perkins, who was driving the Chevrolet S–10 pickup truck in which the revolver in question was found. Defendant Perkins admitted ownership of the gun in question, but, even had he not been truthful, he could have received the two-level enhancement under our cases holding that the enhancement is proper where it was foreseeable to a defendant that his coconspirator would possess a gun in connection with their drug trafficking. *United States v. Nichols,* 979 F.2d 402, 412 (6th Cir.1992); *United States v. Morrow,* 977 F.2d 222, 230–31 (6th Cir.1992) (en banc); *United States v. Chalkias,* 971 F.2d 1206, 1217 (6th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 113 S.Ct. 351, 121 L.Ed.2d 265 (1992).

Defendant Perkins admitted knowing that the gun in question was in the glove compartment of the vehicle driven by defendant Hibbard. Because Perkins knew that Hibbard would be driving the vehicle to a drug trafficking rendezvous in North Carolina, he knew his coconspirator was armed. The commentary to section 2D1.1(b)(1) provides that the "adjustment should be applied if the weapon was present, unless it is *clearly improbable* that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n. 3) (emphasis added). In this case it is not "clearly improbable" that the weapon was connected with the offense. It is more probable that the weapon was to be used to secure the marijuana during shipment and to protect the cash proceeds from its sale. Under these circumstances, the district court was correct in adding two levels to defendant Perkins' base offense level for possession of a dangerous weapon under section 2D1.1(b)(1).

### III.

For the reasons stated, the district court's judgment is AFFIRMED in all respects.