RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0160P (6th Cir.)
File Name: 03a0160p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　*Plaintiff-Appellee,*

　　　*v.*　　　　　　　No. 02-5063

BILLY M. TOWNSEND,
　　　*Defendant-Appellant.*

———

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 01-10018—James D. Todd, Chief District Judge.

Argued: April 14, 2003

Decided and Filed: May 29, 2003

Before: SILER, GILMAN, and GIBBONS, Circuit Judges.

———————————

### COUNSEL

**ARGUED:** David W. Camp, PETTIGREW & CAMP, Jackson, Tennessee, for Appellant. Victor L. Ivy, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee. **ON BRIEF:** David W. Camp, PETTIGREW & CAMP, Jackson, Tennessee, for Appellant. Victor L. Ivy, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

———————————
### OPINION
———————————

SILER, Circuit Judge. Defendant Billy M. Townsend appeals his conviction for manufacturing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The only issue is the validity of a search. We affirm the decision of the district court.

### BACKGROUND

In 2000, a Wal-Mart employee contacted the Milan, Tennessee, Police Department and reported that two men had just purchased a large quantity of pseudoephedrine tablets, lithium batteries, camping fuel and other items. Officer Jason Williams received a radio call to be on the lookout for a white Chevrolet Blazer with the tag number ESA 106, in which the two men had driven away from Wal-Mart. He observed a vehicle matching this description and traveling in the same direction as reported by the radio dispatcher, Bobby Sellers. Sellers had also told Williams the name of the person to whom the vehicle was registered, Townsend, and advised Williams that he was familiar with Townsend as someone who had been "involved in an explosion in a meth lab and had burnt himself at Atwood [Tennessee]." Additionally, Chris Vandiver (another Milan patrol officer) had related over the radio that the same vehicle, registered to Townsend, had been stopped previously in relation to the theft of anhydrous ammonia, another ingredient used in manufacturing methamphetamine.

Before stopping the vehicle, Williams radioed his supervisor, related the information he had, and asked if he agreed that the stop was warranted. After receiving confirmation, Williams activated his lights and stopped the Blazer. As he approached the vehicle, he could see in through the back window, and he observed Wal-Mart shopping bags containing jars, camping fuel, pseudoephedrine, and coffee filters. Two men were in the vehicle. Williams asked the

driver, Townsend, to exit. Williams noticed that Townsend appeared nervous and had trouble talking. Upon observing a knife clipped to Townsend's belt, Williams frisked him, and felt a long, skinny item in his back pocket. He asked Townsend to remove it, revealing it to be an orange plastic tube (part of an ink pen) which Williams recognized as an apparatus for inhaling methamphetamine. Residue of a powdery substance was on it. At this point, Williams placed Townsend under arrest and asked him what was in his front trouser pocket; Townsend produced keys, some change, and a plastic baggie containing methamphetamine. Townsend was taken to the Milan Police Department. A search of his vehicle yielded the methamphetamine precursors and drug paraphernalia.

## STANDARD OF REVIEW

"In reviewing a district court's determinations on suppression questions, a district court's factual findings are accepted unless they are clearly erroneous; however, the district court's application of the law to the facts, such as a finding of probable cause, is reviewed de novo." *United States v. Thomas*, 11 F.3d 620, 627 (6th Cir. 1993).

## DISCUSSION

Townsend challenges the Wal-Mart employee's tip regarding the purchase of ingredients used to make methamphetamine as "unsubstantiated and unreliable," citing Williams's testimony that "he did not talk directly with anyone from Wal-Mart but responded to a call from dispatch," and did not "verify the. . .original source." Townsend also takes issue with the dispatcher's relay of information regarding his previous involvement in an alleged methamphetamine lab explosion, and cites *United States v. Hensley*, 713 F.2d 220, 225 (6th Cir. 1983), for the proposition that the Fourth Amendment does not permit police officers to rely on information from neighboring police departments regarding a potential criminal investigation in which neither the arresting officer nor his department is involved. However, the Supreme Court reversed this court's

ruling in *Hensley*, holding that the admissibility of evidence uncovered during a search incident to an arrest prompted by the circulation of a flyer by another police department turns on whether the department which issued the flyer had probable cause, not whether the officers who relied on the flyer were aware of the specific facts supporting probable cause. *United States v. Hensley*, 469 U.S. 221, 231 (1985). In so ruling, the Court cited favorably a previous opinion in which it had stated that:

> We do not, of course, question that the . . . police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.

*Id.* at 230 (quoting *Whiteley v. Warden*, 401 U.S. 560, 568 (1971)). Thus, Townsend's assertion that Williams was "not allowed" to use another police department's knowledge of or experience with him as a suspect is without support.[1] Sellers's comment regarding the explosion in Atwood was tangential, and not the primary reason for the stop.

In emphasizing that he committed no traffic violations prior to the stop, Townsend also cites *McCurdy v. Montgomery County*, 240 F.3d 512 (6th Cir. 2001), for the proposition that the government may deprive its citizens of liberty only when there is a viable claim that an individual has committed a crime. More precisely, *McCurdy* states that "[p]robable cause

---

[1] Moreover, even if this court's opinion in *Hensley* had not been overruled by the Supreme Court, Townsend's use of that case is inapposite, because *Hensley* addressed the issue of whether a flyer reporting a *past* crime could provide probable cause for an arrest; we distinguished that situation from one in which "the police officer . . . had reason to believe that he was investigating an *ongoing* crime." *Hensley*, 713 F.2d at 224 (emphasis added). In the present case, Williams was investigating an ongoing crime – the suspected manufacture of methamphetamine – when he stopped Townsend.

[for an arrest] requires that police have reasonably trustworthy information sufficient to warrant an officer of reasonable caution to believe the arrestee committed, or is in the process of committing, an offense. . . . [and] further requires that officers articulate concrete and objective facts from which they infer criminal conduct." *Id.* at 517 (internal citations omitted). Townsend, however, appears to collapse the distinction between an investigatory stop and a full-blown arrest. The police may initiate an investigatory stop on less than probable cause, but there must be, under the totality of the circumstances, "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981). This requirement of "reasonable suspicion" may be satisfied by an officer's personal observations, *see Illinois v. Wardlow*, 528 U.S. 119, 124 (2000), and (as stated above) the collective knowledge of the police. The district court found this requirement satisfied because Williams knew: (1) that Townsend had just bought a large quantity of ingredients known to be used in the manufacture of methamphetamine; (2) the color, model, and tag number of Townsend's vehicle, as well as the direction in which it was traveling; (3) that the car had recently been involved in a chase relating to the theft of anhydrous ammonia; and (4) that Townsend had been involved in an explosion at an alleged methamphetamine lab. Following its conclusion that the initial stop was justified, the district court further found that Williams's observance of the knife on Townsend's belt and the nervous manner in which Townsend was acting gave him the right to perform a pat-down for weapons, which, in turn, revealed the methamphetamine inhaler.

This analysis is correct. "While an officer making a *Terry* stop must have more than a hunch, 'reasonable suspicion' is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir. 2000) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Williams's knowledge of the alleged purchase of methamphetamine precursors, coupled with his contemporaneous observation of a car closely

matching the description of the vehicle linked to that purchase, in addition to the information regarding Townsend's possible previous involvement in the illegal manufacture of methamphetamine, provided him with specific and articulable facts justifying the brief investigatory stop. Evidence uncovered during this stop, in turn, provided probable cause for Townsend's arrest.

   **AFFIRMED**.