**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 07a0324n.06**
**Filed: May 8, 2007**

**No. 06-5375**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| STUART MARSHALL | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellant.** | ) | |

BEFORE: NORRIS, GILMAN, and McKEAGUE, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Defendant Stuart Marshall entered a conditional plea of guilty to a six-count indictment, reserving his right to challenge the district court's order denying his motion to suppress. Marshall now appeals from that order, arguing that police officers violated his Fourth Amendment rights by searching his truck and rental property without probable cause. He also appeals his sentence, arguing that the district court erred in classifying him as a career offender. For the reasons that follow, we affirm the district court's denial of Marshall's motion to suppress. While we also affirm the district court's finding that Marshall qualified as a career offender, we must remand for resentencing on one count of the indictment because the sentence imposed exceeds the statutory maximum sentence.

**I.**

In 2003, Marshall was renting property from Fraya Givens, in Robards, Kentucky. In October, Givens called the Henderson County Sheriff's Department after smelling a strong chemical odor coming from the outbuilding located on the property. She believed the smell was associated with drug manufacturing. Detective John Book met with Givens and her son a few houses away from the property. Givens told the officer that, just before he arrived, she and her son saw two men leave the property in Marshall's black Chevy pick-up truck after loading it with several trash bags.

Book called for back-up and went to the rental property with Deputy Keller. He did not smell anything unusual, and when he knocked on the front door of the home, nobody answered. Givens and her son then led officers to the outbuilding. She pointed out that Marshall had installed an exhaust fan in the floor of the outbuilding, which was visible by crouching down. Book then saw Marshall's pick-up truck begin to pull into the driveway but then pull away before actually entering. Keller told Book that, while on his way to the rental property, he had seen the same or similar truck at a dumpster on North Pleasant Valley Road. Book radioed Deputy Sheriff Jeremy Broshears with the truck's description and told him that he believed the truck had Illinois plates. At the suppression hearing, Book testified that he thought he told Broshears to stop the vehicle for questioning.

After receiving Book's call, Broshears saw a truck matching the description he had been given drive past him and noticed that the truck had an expired Illinois license plate sticker. Prior to stopping the truck, he called in the license plate number for verification. Before getting a response, he turned on the cruiser's light bar, and the truck began to speed off. The chase only lasted a couple of minutes because the truck turned on a dead end street and stopped. The occupants identified themselves to Broshears as Stuart Marshall and Paul Bruce. He placed Marshall under arrest for

driving without a license, failure to produce evidence of insurance, driving under the influence, and expired tags.

Soon after, Book arrived on the scene. Bruce eventually told Book that he and Marshall had just dumped several green mesh garbage bags in a dumpster on North Pleasant Valley Road. He also provided a description of the trash bags. Book searched the dumpster and found a green mesh bag containing five Rubbermaid gallon jars. Detective Bill Mills came to the dumpster and tested the containers, which revealed the presence of ammonia and naphtha, chemicals used to manufacture methamphetamine, as well as the presence of methamphetamine. Officers, including Book, then secured the rental property. Near the carport, in plain view, they found a Rubbermaid container and green mesh bags similar to those found in the dumpster. Book went to obtain a search warrant, which was executed after 8:30 p.m. on October 18th.

In the end, Marshall pleaded guilty to the following: Count One, manufacturing five or more grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii); Count Two, possession with the intent to distribute five or more grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(e)(viii); Count Three, possession with the intent to distribute a mixture of a substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); Count Four, possession with the intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); Count Five, being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e); and Count Six, possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c).

Following his conditional guilty plea, Marshall filed a motion to suppress, arguing that officers did not have probable cause to stop his truck and that all of the evidence gathered against him arose out of that stop and must be suppressed as fruit of the poisonous tree. Marshall also argued that officers searched the outbuilding before obtaining a warrant. After a hearing, the district court denied his motion, finding that Broshears was a credible witness who had probable cause to stop the truck once he saw the expired tags. Alternatively, the court held that Broshears had a justifiable basis for performing an investigatory stop of the vehicle in accordance with *Terry v. Ohio*, 392 U.S. 1 (1968). Lastly, the district court rejected the challenge to the search of the outbuilding, finding that the evidence did not support Marshall's position.

## II.

### A. Motion to Suppress

The factual determinations in a district court's suppression order are reviewed for clear error while the application of the law to those facts is reviewed de novo. *United States v. Townsend*, 330 F.3d 438, 439 (6th Cir. 2003). Further, this court will consider the "evidence in the light most likely to support the district court's decision." *United States v. Marxen*, 410 F.3d 326, 328 (6th Cir. 2005) (quotation omitted) (punctuation altered), *cert. denied*, 126 S. Ct. 1445 (2006).

On appeal, Marshall reasserts the arguments that he raised below. He maintains that Broshears did not have probable cause or a reasonable, articulable suspicion to sftop his vehicle, and that any evidence obtained as a result of the illegal stop must be suppressed. He challenges Broshears' credibility, arguing that the truck had a trailer hitch, which made it impossible for the officer to see the expired license plate sticker. Marshall therefore argues that Broshears was lying

when the officer claimed to have seen that the license plate sticker was expired prior to stopping him. He also points to a radio transmission that occurred just before Broshears pulled the truck over. In the transmission, Broshears calls in the tag number but does not say that it is expired.

An officer may, consistent with the Fourth Amendment, lawfully stop a motorist whom he or she has probable cause to believe committed a traffic violation, including driving with expired tags, regardless of the officer's actual motivation for doing so. *United States v. Garrido-Santana*, 360 F.3d 565, 571 (6th Cir. 2004); *Whren v. United States*, 517 U.S. 806, 813 (1996). Marshall does not dispute that the truck had expired tags. Broshears testified that he saw the expired tag before pulling the truck over, and the district court determined that Broshears was credible, a finding which is not clearly erroneous as the evidence showed that the truck's license plate was in fact expired. *See Garrido-Santana*, 360 F.3d at 571-72. Since driving with expired tags constitutes probable cause to stop a vehicle, the district court correctly concluded that the stop complied with the Fourth Amendment. Because we agree that probable cause existed, we need not reach defendant's alternative argument that the stop was impermissible under *Terry v. Ohio*, 392 U.S. 1 (1968).

Marshall next argues that officers illegally searched the outbuilding on the property prior to obtaining a search warrant. This argument is based on a photograph of the outbuilding taken in daylight with its door open. As the search warrant was not obtained until 8:30 p.m., when it was dark outside, Marshall maintains that the photograph must have been taken prior to officers obtaining the search warrant. However, Marshall's position is not entirely substantiated by the record. Book testified that the indoor photographs of the buildings were taken after executing the search warrant

on October 18th, including some photographs taken on the following day. While all of the disks containing photographs are dated the 18th, the consistent testimony given at the suppression hearing is that officers did not attempt to enter the outbuilding until the search warrant was obtained and that photographs were taken on the property on both the 18th and 19th. The district court did not clearly err when it determined that the outbuilding was not searched until officers obtained a warrant.

**B. Related Offenses**

Following his plea, Marshall was sentenced to 216 months of incarceration. He contends that the district court imposed this sentence after determining that he was a career offender, which increased his sentencing range under the guidelines. He maintains that he is not a career offender because the prior felony convictions used to qualify him were part of the same plan or scheme and, therefore, are not qualifying felony convictions. He also challenges the district court's determination that he was an armed career offender. *See* U.S.S.G. 4B1.4.[1] When imposing Marshall's sentence, the district court considered the sentence prescribed under the sentencing guidelines for an armed

---

[1] This provision states that "[a] defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal." U.S.S.G. § 4B1.4. Section 924(e) provides as follows:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1).

career offender but determined that the sentence would be excessive under the circumstances of the case. Instead, the district court concluded that Marshall qualified as a career offender, without the armed career offender enhancement. The district court went on to say that it was imposing a non-guidelines sentence.

Following *United States v. Booker*, 543 U.S. 220 (2005), appellate courts are instructed to review a district court's sentencing determination for reasonableness. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005) (quoting *Booker*, 543 U.S. at 261). District courts are directed to consider the guidelines range, even though it is to be deemed advisory only, as well as the factors identified in 18 U.S.C. § 3553(a), to arrive at a sentence that is "'sufficient, but not greater than necessary, to comply with the purposes set forth in that section.'" *United States v. Johnson*, 467 F.3d 559, 563 (6th Cir. 2006) (quoting *United States v. Foreman*, 436 F.3d 638, 643 (6th Cir. 2006)). Post-*Booker*, we continue to apply the same standard for reviewing the district court's application of the federal sentencing guidelines. *United States v. Martin,* 438 F.3d 621, 637 (6th Cir. 2006). We review a district court's determination of the "relatedness" of prior felony convictions for purposes of sentencing a defendant as a career offender for clear error. *United States v. Horn*, 355 F.3d 610, 613 (6th Cir. 2004).

The presentence report ("PSR") recommended three possible alternative sentences, each of which was considered by the district court. In the first alternative sentence, for Counts One through Five, a total base offense level of 30 was recommended using the Drug Quantity Table, U.S.S.G. § 2D1.1(c)(5), and a marijuana equivalent of 762 kilograms. A three-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a) and (b), was also recommended,

resulting in an adjusted base offense level of 27. When combined with Marshall's criminal history category of VI,[2] the PSR recommended an advisory guidelines range of 130-162 months. After adding his consecutive 60-month sentence on Count Six,[3] Marshall's first recommended sentencing range was 190-222 months.

The second alternative sentence recommended that Marshall qualified as a career offender. *See* U.S.S.G. § 4B1.1.[4] Under this provision, his base offense level is increased to 34.[5] After adjusting downward three levels for his acceptance of responsibility, his adjusted base offense level becomes 31. When combined with his criminal history category of VI, his "career criminal" guidelines range is 188-235 months. *See* U.S.S.G. Sentencing Table. Since 18 U.S.C. §

---

[2] The PSR recommended a criminal history category of VI because Marshall had seven prior convictions resulting in 13 criminal history points.

[3] In Count Six, Marshall was convicted of carrying a firearm in furtherance of a drug trafficking crime. 18 U.S.C. § 924(c)(1)(A)(i) states that a person convicted of this provision, in addition to the drug-trafficking charge, shall be sentenced to a term of imprisonment of not less than five years (60 months). This term was added consecutively to Marshall's recommended guidelines range.

[4] A career offender must meet the following qualifications:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

[5] When a defendant is found to be a career offender, the guidelines direct the court to look at the statutory maximum sentence for his offense. An offense with a statutory maximum sentence of 25 or more years receives a base offense level of 34. U.S.S.G. § 4B1.1(b).

924(c)(1)(A) directs sentencing courts to impose a consecutive 60-month sentence, Marshall's second recommended guidelines range was 248-295 months.

The third alternative sentence recommended a determination that Marshall was an armed career offender. *See* U.S.S.G. § 4B1.4. The same base offense level and adjusted base offense level apply to an armed career offender as to a career offender; however, the guidelines then recommend a sentencing range of 262-327 months. U.S.S.G. § 4B1.1(c)(3).

After considering these three possible alternative sentences, the district court stated that even though Marshall qualified as a career offender, it was not sentencing him as such. Rather, it imposed what it termed a "non-guidelines" sentence of 216 months of incarceration. Marshall does not challenge the reasonableness of his sentence. Given that the actual sentence imposed did not include an enhancement based upon either the "career offender" or "armed career offender" provisions of the guidelines, we need not reach Marshall's arguments concerning the relatedness of his prior convictions. With the one exception addressed next, we hold that the sentence imposed fully complied with *Booker's* reasonableness requirement.

**B. Count Five: Possession of a Firearm by a Convicted Felon**

Although not raised by Marshall, the government notes that Count Five should be remanded for resentencing because the sentence imposed exceeds the statutory maximum authorized by 18 U.S.C. § 924(a)(2). This provision states that the maximum sentence for a violation of § 922(g), being a felon in possession of a firearm, is ten years or 120 months. Marshall, however, received four 156-month concurrent sentences for Counts One, Two, Three and Five. The 156-month sentence on Count Five exceeds the 120-month statutory maximum. While any error could be seen

as harmless, because defendant would receive no less time if resentenced because he received concurrent sentences on Counts One, Two and Three, the sentence should be corrected.

### III.

For the foregoing reasons, the district court's order denying the motion to suppress is **affirmed**. However, the sentence with respect to Count Five is **vacated** and **remanded.** In all other respects the judgment of the district court is **affirmed**.