RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0176p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

                   *Plaintiff-Appellee*,

    *v.*

JOSEPH STEVENSON,

                 *Defendant-Appellant*.

No. 21-3856

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:21-cr-00184-1—James S. Gwin, District Judge.

Decided and Filed: August 9, 2022

Before: SILER, McKEAGUE, and LARSEN, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Michael J. O'Shea, LIPON O'SHEA LEGAL GROUP, Cleveland, Ohio, for Appellant. Vanessa V. Healy, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

SILER, Circuit Judge. Joseph Stevenson appeals the district court's order denying his motion to suppress. For the following reasons, we **AFFIRM**.

**I.**

Police officer Joshua Mason saw Stevenson leave the parking lot of an apartment complex and drive toward the driveway. At the driveway opening, there is one sidewalk running perpendicularly to either side. The sidewalks do not connect across the driveway but instead run in opposite directions. The driveway continues a few more feet and perpendicularly connects to a street. Mason watched Stevenson drive onto the driveway opening—between the sidewalks—without stopping. Stevenson continued a few more feet and stopped at the end of the driveway. After a brief pause, he turned left onto the street.

Mason followed Stevenson and pulled him over for violating Ohio Rev. Code § 4511.431(A). That statute requires drivers to stop before driving onto a "sidewalk area extending across the . . . driveway[.]" Ohio Rev. Code § 4511.431(A). As he approached the passenger's side of Stevenson's car, Mason smelled raw marijuana, and Stevenson readily admitted there was marijuana in the car. Mason directed Stevenson to get out of the car and, right away, found marijuana in the driver-side door. Mason continued to search Stevenson's car and discovered a gun in the glove compartment.

Stevenson was subsequently indicted for being a felon in possession of a firearm and being an indicted person in possession of a firearm. Stevenson moved to suppress the evidence of the gun, but the district court denied the motion. So Stevenson entered a conditional plea to being a felon in possession of a firearm, and now appeals the district court's order denying his motion to suppress.

**II.**

We employ a mixed review standard to a district court's order denying a motion to suppress. *United States v. May-Shaw*, 955 F.3d 563, 566 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2763 (2021). Factual findings are reviewed for clear error and conclusions of law de novo. *Id.* We view the testimony presented at the suppression hearing "in the light most favorable to the district court's conclusions." *Id.* (citing *United States v. McCraney*, 674 F.3d 614, 616–17 (6th Cir. 2012)). We may affirm the district court's decision on any grounds. *United States v. Moorehead*, 912 F.3d 963, 966 (6th Cir. 2019).

## III.

### A. Traffic Stop

Stevenson seeks to suppress evidence of the gun Mason discovered because, Stevenson claims, Mason lacked probable cause to initiate the traffic stop. Mason stopped Stevenson for violating § 4511.431(A), which provides:

> The driver of a vehicle . . . emerging from a[] . . . driveway within a . . . residence district shall stop the vehicle . . . immediately prior to driving onto a sidewalk or onto the sidewalk area extending across the . . . driveway, or in the event there is no sidewalk area, shall stop at the point nearest the street to be entered where the driver has a view of approaching traffic thereon.

Ohio Rev. Code § 4511.431(A). At the suppression hearing, Mason testified he believed Stevenson had violated this statute because the driveway opening that Stevenson drove onto without stopping constituted a "sidewalk area." But Stevenson complains that the driveway opening lacked any visible markers showing either sidewalk "extending across the . . . driveway." *Id.* Stevenson protests the notion that drivers are required to stop before they drive onto an imaginary line where a pair of sidewalks could have connected across a driveway but didn't. Instead, he maintains, the driveway opening between the sidewalks simply was a driveway, and so under § 4511.431(A) he was only required to stop "at the point nearest the street to be entered"—which he did. *Id.* The Government rejects Stevenson's interpretation of § 4511.431(A) because the statute covers not only physical "sidewalks" but "sidewalk *area*[*s*]"— like the space between two sidewalks. *Id.* (emphasis added). The Government contends, at a minimum, the traffic stop was justified under the Fourth Amendment because Mason reasonably interpreted the phrase "sidewalk area" to be a driveway area intended for pedestrians to walk from one sidewalk to the other. We agree with the Government. Right or wrong, Mason reasonably relied on § 4511.431(A) to stop Stevenson.

The Fourth Amendment protects "against unreasonable . . . seizures[.]" U.S. Const. amend. IV. An "ordinary traffic stop" is a "seizure." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). Consequently, an officer must be reasonably justified to stop a car, and evidence seized during an unjustified stop usually

"must be suppressed as 'fruit[] of the poisonous tree.'" *Id.* (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)). In this circuit, an officer is justified to stop a car based on "mere 'reasonable suspicion' that a felony has occurred or that a misdemeanor is occurring[.]" *United States v. Brooks*, 987 F.3d 593, 598 (6th Cir. 2021). But where the officer suspects only the completed violation of a civil traffic code—like § 4511.431(A)—our cases leave the level of justification "unclear[.]" *Id.* Traditionally, we have required the officer to have probable cause to believe the infraction was committed, *Blair*, 524 F.3d at 748 (citation omitted), but from the outset we questioned that approach, *see e.g.*, *United States v. Simpson*, 520 F.3d 531, 538–541 (6th Cir. 2008). Thankfully, we need not address this question today because where an officer possesses probable cause, he necessarily possesses reasonable suspicion. *See Brooks*, 987 F.3d at 598. And we find Mason possessed probable cause.

"Probable cause 'is not a high bar.'" *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). It exists where the "facts and circumstances" are "sufficient to warrant a prudent person . . . in believing . . . that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). It is a "practical and common-sensical standard" based on "the totality of the circumstances." *Florida v. Harris*, 568 U.S. 237, 244 (2013). Importantly, officers may make certain reasonable mistakes and still have probable cause. *See Heien v. North Carolina*, 574 U.S. 54, 62 (2014).

The Supreme Court in *Heien v. North Carolina* explained what mistakes an officer may make without violating the Fourth Amendment. There, an officer pulled over Heien for driving with only one working brake light. *Id.* at 57. During the stop, officers solicited Heien's consent to search his car and found contraband. *Id.* at 58. Heien moved to suppress the evidence, but the state trial court denied the motion. *Id.* The state court of appeals, however, reversed; it found the officer did not have reasonable suspicion to stop Heien because the vehicle code only required cars to be equipped with "*a* stop lamp"—singular. *Id.* at 58–59 (citing N.C. Gen. Stat. § 20–129(g)) (emphasis added). The state supreme court accepted this interpretation but reversed nonetheless because the officer's "mistaken understanding of the vehicle code was reasonable." *Id.* at 59.

The Supreme Court affirmed.  It began by recognizing that the "ultimate touchstone of the Fourth Amendment is 'reasonableness,'" *id.* at 60 (quoting *Riley v. California*, 573 U.S. 373, 381 (2014)), and so it held "the Fourth Amendment allows for some mistakes on the part of government officials."  *Id.* at 61.  For instance, the *Heien* Court recognized the well-established rule that an officer may make reasonable *mistakes of fact* and still be justified to initiate a traffic stop.  *Id.*  The Court gave an example of an officer who pulled over a lone motorist for driving in a carpooling lane, only later to discover several passengers slumped over, asleep in the backseat. *Id.* at 57.  In that example, the officer still had reasonable suspicion to believe the motorist was violating the law because the officer reasonably believed the motorist was alone.  *Id.*

The Court then recognized that *mistakes of law* "are no less compatible" with the Fourth Amendment: "reasonable men make mistakes of law, too."  *Id.* at 61.  And although mistakes of law cannot impose or exculpate criminal liability for a traffic offense, "it does not follow that they cannot justify [the] investigatory stop," itself.  *Id*. at 67.  So long as it was "objectively reasonable," the Fourth Amendment "tolerates" an officer's mistake of law.  *Id.* at 66.  For example, while the statute in *Heien* had required that cars be equipped with a single "stop lamp," it also required that *all* "rear lamps" be in "working order."  *Id.* at 67–68 (citing N.C. Gen. Stat. § 20–129(d), (g)).  Without conclusively interpreting the statute, the *Heien* Court found that the officer reasonably read the phrase "rear lamps" to include brake lights and resultantly reasonably believed the statute required that all brake lights be in "working order"—especially considering the state courts of appeals hadn't interpreted either provision *before* the stop.  *Id.* at 68.  The Court therefore held the officer had reasonable suspicion to believe Heien had violated the vehicle code because Heien was driving admittedly without all his brake lights in "working order."  *See id.*  And because the officer's mistake of law was objectively reasonable, "there was no violation of the Fourth Amendment in the first place."  *Id.* at 66.

The Government argues if Mason did not correctly interpret § 4511.431(A), he at least made a similar reasonable mistake of law.  Remember, Mason believed the driveway opening that Stevenson drove onto was a "sidewalk area" because pedestrians could walk from one sidewalk to another by walking across the driveway.  The Government maintains Mason's

interpretation was objectively reasonable, as it makes most sense of the statutory language and context.

We begin our inquiry with Ohio caselaw. *Cf. Barrera v. City of Mount Pleasant*, 12 F.4th 617, 621 (6th Cir. 2021) ("Favorable case law goes a long way to showing that an interpretation is reasonable."); *see also Heien*, 574 U.S. at 67 ("[O]ur decision does not discourage officers from learning the law . . . [because] [w]e do not examine the subjective understanding of the particular officer involved."). Although Ohio courts have relied on § 4511.431(A), none has defined the phrase "sidewalk area." *See, e.g.*, *State v. Little*, 2011 WL 3656266, at *2 (Ohio Ct. App. Aug. 22, 2011) ("Officer Abrams then observed the vehicle stop on the sidewalk area extending across the supermarket parking lot exit for approximately two minutes[.]"). Absent further judicial direction, we must consider the statutory language itself. *See Heien*, 574 U.S. at 70 (Kagan and Ginsburg, J, J., concurring) ("A court tasked with deciding whether an officer's mistake of law can support a seizure thus faces a straightforward question of statutory construction.").

When we review the statute, our task is not to arrive at the correct interpretation of the state law but simply to decide whether the officer's interpretation of that law was objectively reasonable. *See Barrera*, 12 F.4th at 621. For Mason's interpretation of the phrase "sidewalk area" to be unreasonable, § 4511.431(A) must have clearly permitted Stevenson's conduct. *Cf Heien*, 574 U.S. at 70 (Kagan and Ginsburg, J, J., concurring) ("If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake."). Upon review, we find it did not.

Ohio courts interpret a statute according to its plain meaning. *See ex rel. Bratenahl v. Village Of Bratenahl,* 136 N.E.3d 447, 450 (Ohio 2019) ("We begin our analysis with the text of the act, focusing on the ordinary meaning of its terms and structure."). Ohio law does not define "sidewalk area," though it does define a "sidewalk." A "sidewalk" is a "portion of a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines, intended for the use of pedestrians." Ohio Rev. Code § 4511.01(FF). Dictionaries define "area" as "a particular extent of space or surface," *Area*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/area?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last

visited June 23, 2022), or "a roughly bounded part of the space on a surface," *Area*, THE AMERICAN HERITAGE DICTIONARY, https://ahdictionary.com/word/search.html?q=area (last visited June 23, 2022). Notably, when modifying another word like "sidewalk," the word "area" means "a designated part of a larger . . . space, intended for a specific activity." *Area*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/view/Entry/10505?redirectedFrom=area#eid (last visited June 23, 2022). Based on these definitions, the phrase "sidewalk area extending across the . . . driveway" is ambiguous. It may mean—as Stevenson argues—a driveway area where a sidewalk extends across one side to the other, or it may mean—as Mason believed—a driveway area "intended" for pedestrians to walk from one sidewalk to the other.

While "we need not resolve each mete and bound" of the statute, the statutory context does not undermine Mason's reading, either. *Barrera*, 12 F.4th at 624. For instance, Stevenson interprets the phrase "sidewalk area extending across the . . . driveway" to require a "visible sidewalk running across the driveway." But if such is the case, why does § 4511.431(A) mention both a "sidewalk" *and* a "sidewalk area"? § 4511.431(A). It's plausible that *any* sidewalk pavement visibly extending across a driveway would constitute a "sidewalk" under § 4511.431(A), and so Stevenson's proposed interpretation of "sidewalk area" would render the mention of a "sidewalk" superfluous. *See Boley v. Goodyear Tire & Rubber Co.*, 929 N.E.2d 448, 452 (Ohio 2010) ("No part should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative." (citation omitted)).

Similarly, § 4511.431(A) goes on to provide that "in the event there is no sidewalk area," a driver need only stop at the "point nearest the street[.]" § 4511.431(A). After reading each of its clauses together, subsection (A) therefore seems to envision three scenarios: (1) if there is a "sidewalk" extending across the driveway, a driver must stop; (2) if a "sidewalk" does not extend across the driveway, but a "sidewalk area" does, a driver must stop; or (3) if a "sidewalk area" does not extend across the driveway, a driver may proceed to "point nearest the street" and then stop. This dichotomy implies that a driveway looks physically the same under options two and three, *i.e.*, a "sidewalk" is not extending across the driveway. Thus, it's plausible the only thing visibly distinguishing a "sidewalk area" from a plain driveway is the presence or absence of

sidewalks *on either side* of the driveway, as Mason believed—not *across* it, as Stevenson believes.

Mason's interpretation of § 4511.431(A) was clearly reasonable.  He reasonably believed a "sidewalk area" is a driveway area intended for pedestrians to walk from one sidewalk to the other.  And having this reasonable belief, Mason had probable cause to initiate the traffic stop. *Cf. Heien*, 574 U.S. at 68 ("[B]ecause the mistake of law was reasonable, there was reasonable suspicion justifying the stop.").  The facts are undisputed.  Stevenson failed to stop his car before he drove onto the driveway opening that ran between the sidewalks.  This was "sufficient to warrant a prudent person" in believing Stevenson had violated § 4511.431(A). *DeFillippo*, 443 U.S. at 37.

### B.  Search

As an additional basis to suppress evidence of the gun, Stevenson accuses Mason of unconstitutionally prolonging the traffic stop.  He begins by complaining that "[i]nstead of issuing a citation," Mason "smelled raw marijuana."  While it's true that a stop "justified only by a police-observed traffic violation" *may* "become unlawful if it is prolonged beyond the time reasonably required" to issue the ticket, *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015) (cleaned up) (citation omitted), the Fourth Amendment permits officers to smell while they issue traffic tickets, *see United States v. Sheckles*, 996 F.3d 330, 345 (6th Cir.), *cert. denied*, 142 S. Ct. 717 (2021).  And any newly discovered information "can create reasonable suspicion to detain the driver longer in order to investigate the other crimes." *Id.* (citation omitted).  So the smell of marijuana, itself, justified Mason to detain Stevenson and investigate the odor's source. *See id.*

Mason was equally justified to search Stevenson's entire car.  The warrantless search of a lawfully stopped car is constitutional if the search is based on probable cause. *See United States v. Ross*, 456 U.S. 798, 823 (1982).  "[O]ur court has long held that officers have the required probable cause when they detect the odor of illegal marijuana coming from the vehicle." *Brooks*, 987 F.3d at 599.  Stevenson acknowledges this but believes Mason prolonged the stop because he searched Stevenson's glove compartment after he already found marijuana in the driver-side

door.  But so long as probable cause justifies searching the vehicle, "it justifies the search of *every* part of the vehicle and its contents that may conceal the object of the search."  *Ross*, 456 U.S. at 825 (emphasis added).  So the smell of marijuana, Stevenson's admission, or the discovery of marijuana, itself—pick any—gave Mason probable cause to continue searching the entire car for marijuana, including the glove compartment.  *See, e.g.*, *United States v. Burnett*, 791 F.2d 64, 67 (6th Cir. 1986); *United States v. Crumb*, 287 F. App'x 511, 514 (6th Cir. 2008).

## CONCLUSION

**AFFIRMED**.