RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0265p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

           *Plaintiff-Appellee*,

    *v*.

DONALD E. JONES, JR.,

           *Defendant-Appellant*.

No. 21-3910

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Youngstown.
No. 4:19-cr-00204-1—Dan A. Polster, District Judge.

Decided and Filed: December 13, 2022

Before: MOORE, GIBBONS, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:** Terra L. Bay, Chattanooga, Tennessee, for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

LARSEN, Circuit Judge. Warren, Ohio, police officers responded to a call about an unknown disturbance at a gas station in the early morning hours. They found Donald Jones playing loud music from his SUV in the parking lot. Jones turned off the music, and, in the 30 to 40 seconds it took the officers to drive around the store to investigate the original disturbance, Jones drove away. The officers followed Jones, pulled him over, and told him that they had stopped him for a noise ordinance violation. The officers then smelled marijuana and searched the car, finding hidden compartments containing two firearms, drugs, and drug paraphernalia.

The district court denied Jones's challenge to the admission of this evidence, and Jones was ultimately convicted on four gun-and-drug-related counts. For the reasons stated, we AFFIRM.

I.

Around 3:00 a.m. on November 11, 2018, two Warren police officers arrived at a Sunoco gas station in response to a call about an unknown disturbance, which was a "spillover" from a nearby bar. The officers, Michael Edwards and Donald Shipman, observed a few people milling about the parking lot and multiple parked cars; they also heard loud music coming from a parked black GMC Yukon SUV that was registered to Donald Jones. Officers testified that the music was so loud they could feel the vibrations coming from the car. A man outside the SUV made a slashing motion to indicate to turn the music down, and Jones, sitting in the driver's seat of the SUV, turned the music off. The officers then circled around the building in response to their initial disturbance call and, finding nothing out of the ordinary, returned to the front of the gas station 30 to 40 seconds later. In that time, Jones had driven out of the parking lot.

The officers followed Jones for approximately a mile before pulling him over. Edwards approached Jones, told him that he was being stopped for a noise ordinance violation, and, "at some point" during the stop issued Jones a citation for violating the Warren City noise ordinance. *See* Warren, Ohio, Ordinances ch. 509.09(a)(3) (2022). Edwards testified that he smelled burnt marijuana coming from inside the car, asked Jones to step out of the car, and patted him down. The pat down revealed no weapons, but Edwards removed Jones's bulky wallet from Jones's pocket and noticed a large amount of cash in the wallet.

Edwards searched the SUV. Edwards testified that he noticed a loose access panel near the driver's side floorboards on the transmission hump, so he pulled off the panel and found plastic baggies and a digital scale. Edwards then lifted the armrest of the center console and found a container with marijuana residue in it. Seeing that the cupholders were also loose, Edwards lifted the cupholders and found two loaded firearms and a glass jar with narcotics inside; the parties stipulated that the narcotics were 53 Tramadol pills and 18.03 grams of a heroin and fentanyl mixture. A third officer, William Fowler, who arrived to assist with Jones's arrest, seized $9,050 from Jones; Jones had cash in his wallet, pocket, and shoe.

A federal grand jury indicted Jones on four counts: felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); possession with intent to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); possession with intent to distribute Tramadol, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(E)(2) and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

Jones moved to suppress the evidence recovered from the stop as the fruit of an illegal seizure, claiming that the Fourth Amendment does not authorize stops based on a completed non-traffic misdemeanor offense.[1] The district court denied the suppression motion. The court found that the officers had probable cause, based on their own "firsthand" observations, that Jones had violated the noise ordinance; accordingly, they had a basis to stop and cite Jones.[2]

Jones went to trial. Edwards, Shipman, Fowler, and an additional officer, John Dina, testified. Edwards, Shipman, and Fowler testified about the events on the night of Jones's arrest while Dina testified about drug trafficking generally. At the close of the government's case, Jones moved for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure; the district court denied the motion. Jones testified as part of his defense. Jones did not renew his Rule 29 motion for acquittal at the close of evidence.

A jury found Jones guilty on all four counts. The district court sentenced Jones to 124 months' imprisonment. Jones timely appealed.

## II.

## A.

Jones appeals the district court's denial of his suppression motion. The Fourth Amendment protects "[t]he right of the people" to be free from "unreasonable searches and seizures." U.S. Const. Amend. IV. A vehicle stop is a seizure. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). "Whether a seizure was reasonable under the Fourth Amendment is a

---

[1]Neither party disputes that violating the noise ordinance constitutes a misdemeanor offense.

[2]The district court also found that the search of Jones's car was justified because Edwards smelled marijuana; Jones does not challenge that search on appeal.

question of law," so we review the reasonableness of Jones's stop de novo.  *United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009).

The stop of Jones's car was reasonable under the Fourth Amendment.  The Supreme Court has repeatedly held that the Fourth Amendment permits officers to warrantlessly arrest—that is, to seize—a person if the officer has probable cause to believe that the suspect has committed a misdemeanor in his presence.  *See Virginia v. Moore*, 553 U.S. 164, 171 (2008) ("In a long line of cases, we have said that when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt.  The arrest is constitutionally reasonable."); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding a warrantless arrest based on probable cause for a fine-only misdemeanor offense was constitutional); *id.* at 340 n.11 (reserving question "whether the Fourth Amendment entails an 'in the presence' requirement for purposes of misdemeanor arrests"). And our court has held that the offense need not even have been committed in the officer's presence to satisfy the Fourth Amendment—probable cause alone is sufficient to seize a person suspected of a misdemeanor.  *Graves v. Mahoning Cnty.*, 821 F.3d 772, 778 (6th Cir. 2016); *United States v. Smith*, 73 F.3d 1414, 1416 (6th Cir. 1996) (The in-the-presence requirement "is not mandated by the Fourth Amendment; it is merely a rule of the common law.").

The district court here determined that the officers had probable cause to believe that Jones had committed a misdemeanor in their presence.  We agree.  Probable cause is a "reasonable ground[] for belief, supported by less than prima facie proof but more than mere suspicion."  *United States v. Ray*, 803 F.3d 244, 275 (6th Cir. 2015) (citation omitted).  The Warren City ordinance prohibits noise that "annoys, disturbs, offends, injures or endangers the repose, health, safety, peace, quiet or comfort of any reasonable person of normal sensitivity."  Warren, Ohio, Ordinances ch. 509.09(a)(3) (2022).  Based on the officers' testimony, Edwards and Shipman had "more than [a] mere suspicion" that Jones had violated the ordinance because they saw that Jones's SUV was the only running car in the parking lot, and they heard the extremely loud music, and felt the vibrations, coming from his vehicle.  *See Ray*, 803 F.3d at 275.  Having established grounds sufficient to arrest Jones, it follows *a fortiori*, that the officers had sufficient cause to stop him to issue a citation.

Jones's arguments to the contrary are unavailing. First, it does not matter, as Jones argued in the district court, that there was a slight delay between the completion of the misdemeanor and the stop. The district court correctly found that just because the officers had probable cause, they did not "have to drop everything and . . . stop someone immediately." Jones does not get to benefit from the "good fortune" of being "able to conclude his offenses and elude the police." *See Smith*, 73 F.3d at 1417.[3]

Jones next relies on the balancing of factors set forth in a case decided after his suppression hearing—coincidentally named *United States v. Jones*, 953 F.3d 433 (6th Cir. 2020). But *Jones* does not help Jones. The *Jones* decision considered when a person may be subjected to a *Terry* stop to investigate a completed misdemeanor based on *less* than probable cause. *See, e.g.*, *id.* at 437–38 (asking whether "'restraining police action *until after probable cause is obtained*'" would "unnecessarily hinder the investigation or allow a suspect to 'flee in the interim'" (emphasis added) (citation and alteration omitted)). Nothing in *Jones* purported to (or could have) disturbed this court's caselaw holding that probable cause is sufficient to effect a misdemeanor arrest under the Fourth Amendment. *See, e.g.*, *Graves*, 821 F.3d at 776; *Smith*, 73 F.3d at 1416. Nor could it have disturbed the Supreme Court's repeated holdings that probable cause suffices, at least when, as here, the misdemeanor offense was committed in the officers' presence. *See, e.g.*, *Moore*, 553 U.S. at 171; *Atwater*, 532 U.S. at 354; *Whren*, 517 U.S. at 818. *Whren* explained that a "'balancing' analysis" may be required in cases, like *Jones,* that "involve[] seizures without probable cause." 517 U.S. at 818. Such an analysis may also be appropriate in cases "involv[ing] searches or seizures conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests." *Id.* But Jones's case— a vehicular stop to issue a citation for a misdemeanor offense committed in the officers' presence—does not fit either category. Jones's case is "governed by the usual rule that probable

---

[3]The common law "in-the-presence" requirement seems to carry with it a rule that "a warrantless arrest must be made promptly, that is, at the time of the offense or as soon thereafter as circumstances permit." Wayne R. LaFave, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 5.1(c) (Oct. 2022 Update). But even if this were the constitutional rule, we would not think the delay in this case unreasonable. As the district court explained, the officers here "did the right thing. They responded to some concern about an incident at the bar, and they went around and made sure no one seemed to be hurt and then they immediately turned their attention back to Mr. Jones, and they would have stopped—they would have gone right up to him, except he had moved."

cause to believe the law has been broken 'outbalances' private interest in avoiding police contact." *Id.* The district court did not err in denying Jones's motion to suppress.

B.

Jones also challenges his conviction for possessing a firearm in furtherance of drug trafficking, asserting that there was insufficient evidence to support his conviction. Jones did not renew his motion for acquittal at the conclusion of his case, so we review his claim under a "manifest miscarriage of justice" standard. *United States v. Kuehne*, 547 F.3d 667, 697 (6th Cir. 2008) (quoting *United States v. Carnes*, 309 F.3d 950, 956 (6th Cir. 2002)). We may reverse Jones's conviction only if "the record is devoid of evidence pointing to guilt." *Id.* (quoting *Carnes*, 309 F.3d at 956).

The search of Jones's SUV revealed two loaded firearms in close proximity to drugs, plastic baggies, and a digital scale. And Jones was carrying a large amount of cash. Dina testified that he saw guns, drugs, money, and digital scales together "all the time" in drug trafficking operations. Under the stringent "manifest miscarriage of justice" standard, sufficient evidence supports the conviction for possessing the firearms in furtherance of drug trafficking. *See United States v. Penney*, 576 F.3d 297, 315 (6th Cir. 2009); *United States v. Ham*, 628 F.3d 801, 808–09 (6th Cir. 2011). Because the record is not devoid of evidence pointing to guilt, Jones's insufficiency argument fails.

C.

Finally, Jones alleges that nine comments made by the prosecutor in his closing argument amount to prosecutorial misconduct and require reversal. Jones did not object to these alleged misstatements during trial, so we review for plain error. *United States v. Hall*, 979 F.3d 1107, 1119 (6th Cir. 2020) (citation omitted). "Plain error is '(1) error (2) that was obvious or clear, (3) that affected [the] defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Wells*, 623 F.3d 332, 337 (6th Cir. 2010) (quoting *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)).

We afford the prosecution "wide latitude" during its closing argument and analyze the "disputed comments in the context of the trial as a whole and recogniz[e] that inappropriate comments alone do not justify reversal where the proceedings were 'otherwise fair.'" *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)).

Jones has not shown that the prosecutor's remarks rise to the level of plain error. Five of the contested remarks were statements suggesting that only the SUV's owner could have known about the guns and drugs in the vehicle. Jones argues that these statements imply that "as the owner of the vehicle, Mr. Jones was *per se* guilty of possessing whatever was found inside." But the prosecutor was responding to Jones's testimony that he was not the only person to use his car: Jones had explained that he lent the car to his children's mother, his brother, and his brother's friend and had left the car at a repair shop for months. Jones said he did not know how the drugs, drug paraphernalia, and guns ended up in the car, did not know they were there, and did not know about the hidden compartments. The prosecutor was free to respond to a defense theory and testimony.

Jones also takes issue with the prosecutor's remark that "it is also, I think, ridiculous to suggest that these guns were placed there by somebody else because think about your own experiences." Jones argues that by saying the defense theory was "ridiculous," the prosecutor implied that he knew something the jurors did not, and implied that the jury should trust the government's judgment. *See United States v. Dalton*, 574 F. App'x 639, 645 (6th Cir. 2014). But this wasn't a case where the prosecutor told the jury to trust him over evidence presented in court. It is not plain error for a prosecutor to tell jurors to use their own backgrounds and experiences to think about the evidence they had heard. And unlike *Dalton*, which Jones cites, the prosecutor did not inject his own "personal integrity" into the argument with this remark.

Next, Jones challenges the prosecutor's description of the pills found in the car as "a substantial amount of prescription drugs, far more than anybody would need for their personal use." But Dina testified that Tramadol pills are used to "cut" heroin and fentanyl to increase the drugs' potency and that a "user" amount of heroin or fentanyl is around one-tenth of a gram.

A prosecutor may "summarize the evidence and comment on its quantitative and qualitative significance." *United States v. Gonzalez*, 512 F.3d 285, 292 (6th Cir. 2008) (citation omitted).

Next, Jones challenges the prosecutor's statement that the firearms found in the car were meant "for two different purposes. . . . The big gun was being used to protect himself when he had his drugs and his money in the car, and the smaller gun was clearly designed to be carried on him in a concealed manner to protect himself when he was engaged in this drug trafficking outside of the car." The guns were in evidence; Jones himself testified that he had carried guns for protection in the past; and Dina testified that police often discover drugs, scales, currency, and firearms near each other in drug trafficking investigations. While the prosecutor could have refrained from editorializing on the use of the guns, Jones hasn't shown that the remark amounts to plain error given the evidence and testimony already before the jury.

Lastly, Jones challenges the prosecutor saying: "When you add all this up, what this shows is that Mr. Jones was out on the streets of Warren on November 11th, 2018; that he was offering both heroin and Tramadol for sale; that he had been actively selling these drugs. He needed these guns to protect himself, to protect his cash, to protect his equipment, and to protect his product." This was not error. Jones was charged with possession with intent to distribute heroin and fentanyl on November 11, 2018. The government presented evidence that Jones had drugs, drug paraphernalia, guns, and cash with him that night. So the prosecutor was merely summarizing the charges and evidence against Jones.

Because none of the statements Jones identifies amount to plain error, his prosecutorial misconduct claim fails.

* * *

We AFFIRM.