NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0472n.06

Case No. 22-3655

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Nov 13, 2023
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DARWIN DWAYNE HUTCHINS, | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |

O P I N I O N

Before: SUTTON, Chief Judge; DAVIS and MATHIS, Circuit Judges.

STEPHANIE D. DAVIS, Circuit Judge. In November 2020, police in Cleveland, Ohio, spotted Defendant-Appellant, Darwin Hutchins, stopped at a red traffic signal in a black Mercedes sport utility vehicle ("SUV"). A few minutes before that, the officers had received a radio alert that a black Mercedes SUV traveling at a high rate of speed had run a red traffic light—on the same street where the officers now saw Hutchins. Suspecting that Hutchins' SUV was the same vehicle identified in the alert, the officers conducted a traffic stop during which Hutchins was either removed from or required to step out of the vehicle. Once Hutchins was out, an officer observed a handgun protruding from the driver's seat area in plain view. Officers seized the weapon and also recovered illegal drugs and drug paraphernalia from the SUV. As a result of the stop, Hutchins was charged and convicted of a combination of firearm and drug trafficking offenses. The district court imposed a within-Guidelines sentence of 327 months.

Hutchins appeals his conviction, arguing that the evidence from the stop should have been suppressed because the officers' reliance on the generic description of a "black Mercedes SUV" led to an unreasonable seizure under the Fourth Amendment. He also challenges his sentence as both procedurally and substantively unreasonable. For the reasons that follow, we affirm.

I.

Late on the night of November 4, 2020, Sergeant McGrath of the Cleveland Police Department ("CPD") saw a black Mercedes SUV speed through a red light, driving southbound on East 55th Street near Central Avenue. McGrath lost sight of the SUV but radioed other CPD officers in the area to report his observation. Less than five minutes later, other officers patrolling nearby spotted a black Mercedes SUV traveling northbound on East 55th Street—less than a mile from where McGrath had witnessed the traffic violation. These officers stopped the Mercedes. As the officers approached they noticed the driver, Hutchins, reaching down toward the vehicle's console. Surmising that Hutchins might be attempting to conceal a firearm, officers had him exit the vehicle. As Hutchins stepped out, officers observed a pistol protruding from a space by the driver's seat near the center console. After confirming that Hutchins did not have a concealed-weapon permit, the officers arrested him and searched the SUV. In the map pocket of the driver's door, they found a bag containing 18 grams of a drug mixture containing acetylfentanyl, fentanyl, and 4-ANPP (a precursor to fentanyl); in the glove compartment, they located digital scales—commonly used in the illegal drug trade.

A federal grand jury indicted Hutchins for three crimes: possession with intent to distribute controlled substances, felon in possession of a firearm, and possession of a firearm in furtherance of a drug-trafficking crime. Hutchins moved to suppress the evidence seized during the traffic stop, arguing that the stop was illegal and that officers improperly removed him from the vehicle.

Specifically, Hutchins argued that the officers lacked probable cause to conduct the traffic stop because they had lost sight of the Mercedes SUV that had committed the initial traffic violation, and they did not observe his vehicle commit any new violations. Because Hutchins did not dispute the underlying facts of the traffic stop or the seizure, the district court declined to hold an evidentiary hearing and denied the motion to suppress based on the parties' briefing. The district court reasoned that, under the totality of the circumstances, the officers had probable cause to believe that Hutchins' vehicle was the same black Mercedes SUV that committed the initial traffic violation because: the officers had focused on the area near where the traffic violation occurred; they stopped Hutchins' vehicle within minutes of the violation; and the stop occurred at "11:30 at night and was executed on a luxury vehicle—a black Mercedes SUV." (R. 26, PageID 82-83).

Hutchins proceeded to trial where a jury convicted him of the felon-in-possession-of-a-firearm count but deadlocked on the other two counts. Rather than face retrial, Hutchins later pleaded guilty to the remaining counts in exchange for the government's agreement to (1) forego a statutory sentencing enhancement under 21 U.S.C. § 851 based on Hutchins' prior serious felony drug conviction; and (2) recommend to the court that he receive acceptance-of-responsibility credit.

Though he was no longer subject to a statutory sentencing enhancement, which would have raised his maximum imprisonment term to life, he still faced considerable prison time. At sentencing, the district court found that Hutchins qualified as a "career offender" under the United States Sentencing Guidelines because of two prior felony drug trafficking convictions. *See* U.S.S.G. § 4B1.1. Hutchins' designation as a career offender swelled his Guidelines range to 262 to 327 months. The district court imposed a sentence at the high end of the range, for a total of 327 months' imprisonment.

On appeal, Hutchins argues that the district court abused its discretion in declining to hold an evidentiary hearing on his motion to suppress, and in finding that the police had probable cause to stop his SUV. Hutchins also contends that his sentence is procedurally and substantively unreasonable. Finally, Hutchins maintains that because Ohio law criminalizes more cocaine isomers than does federal law, his 2002 Ohio conviction for preparation of cocaine is not a career-offender predicate.

II.

We first consider Hutchins' claims surrounding the district court's denial of his motion to suppress. When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Whitley*, 34 F.4th 522, 528 (6th Cir. 2022). The evidence is viewed "in the light most likely to support the district court's decision." *United States v. Powell*, 847 F.3d 760, 767–68 (6th Cir. 2017) (quoting *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000)). And we consider the district court's "decision not to hold an evidentiary hearing on a motion to suppress under the abuse-of-discretion standard." *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019) (citation omitted).

A.

*Evidentiary hearing.* We address these issues in reverse order. The district court is required to hold an evidentiary hearing only where the record presents "contested issues of fact going to the validity of the search." *Ickes*, 922 F.3d at 710 (quoting *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006)). Hence, if a defendant's "argument is 'entirely legal in nature,'" the court may proceed on the papers alone. *Id*. (quoting *Abboud*, 438 F.3d at 577). That was the case here.

In Hutchins' motion and briefing before the district court, he did not indicate that the facts of the stop were in dispute or assert that further development of the record was necessary. Nor did the facts contained in his moving papers contradict the government's version of the facts. *See United States v. Gallagher*, No. 22-3277, 2022 WL 17688485, at \*6 (6th Cir. Dec. 15, 2022) ("We . . . look to the motion itself to identify issues of fact warranting a hearing for further exploration."). Instead, Hutchins' motion recited facts that aligned with the government's version of events: CPD "saw a black Mercedes Benz SUV traveling southbound at a high rate of speed and run a red stop light;" CPD "proceeded to turn around and look for the vehicle but lost sight of it due to its high rate of speed;" later, CPD "observed a black Mercedes Benz SUV traveling north bound [sic] on East 55th Street" and stopped this vehicle though they had not seen it commit any new traffic violation. (R. 21, PageID 66). Rather than dispute the accuracy of the operative facts, Hutchins argued to the district court that they could not support a finding of probable cause. He renews this argument on appeal. However, because this argument is "entirely legal in nature," *Ickes*, 922 F.3d at 713 (quoting *Abboud*, 438 F.3d at 577), the district court was both equipped and permitted to decide the merits of Hutchins' motion to suppress without holding an evidentiary hearing.[1] As such, we cannot say that the district court abused its discretion in declining to hold a hearing.

---

[1] It is true that Hutchins mentions in a footnote in his opening brief that his pro se motion for reconsideration included the assertion that he was traveling in a different direction than the vehicle that was spotted running the red light; that the police report merely described a black Mercedes—not a black Mercedes SUV; and that various other details were missing. (*See* Doc: 34, Page: 17–18 n.1.) But the government never disputed the direction of travel for the red-light-running vehicle or his vehicle. And Hutchins' revised description of the vehicle in his motion for reconsideration was at odds with the description he set forth in his own recounting of facts in his motion to suppress. Thus, we do not find that these assertions raise any meaningful factual dispute.

B.

*Reasonableness of the Stop.* Hutchins next argues that even if the district court did not abuse its discretion in declining to hold an evidentiary hearing, it erred in concluding that the officers' stop of his SUV satisfied the Fourth Amendment. We assess the reasonableness of Hutchins' stop de novo. *Ickes*, 922 F.3d at 710. And we are not limited to the record as it existed at the time the motion to suppress was decided; we may affirm a district court's denial of a motion to suppress based on trial testimony. *United States v. Hardin*, 539 F.3d 404, 417 (6th Cir. 2008); *see also United States v. Hinojosa*, 606 F.3d 875, 880 (6th Cir. 2010).

The Fourth Amendment prohibits "unreasonable . . . seizures," U.S. Const. amend. IV, and "[a] vehicle stop is a seizure," *United States v. Jones*, 55 F.4th 496, 500 (6th Cir. 2022). "An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment." *United States v. Collazo*, 818 F.3d 247, 253 (6th Cir. 2016) (quoting *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008)). When police officers witness a traffic violation, "they may stop the driver and his car." *United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010). Officers may also stop a vehicle when they have probable cause *to believe* the vehicle has committed a traffic violation. *Whren v. United States*, 517 U.S. 806, 810 (1996); *Collazo*, 818 F.3d at 253–54. There has been much discussion in our circuit about whether a probable cause standard or a reasonable articulable suspicion standard applies to traffic stops. *See United States v. Stevenson*, 43 F.4th 641, 645 (6th Cir. 2022) (recognizing the tension in our case law); *United States v. Simpson*, 520 F.3d 531, 538-539 (6th Cir. 2008) (discussing the confusion in this circuit as to which standard applies). "This circuit 'has developed two separate tests to determine the constitutional validity of vehicle stops: an officer must have probable cause to make a stop for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal

violation.'" *Collazo*, 818 F.3d at 253–54 (quoting *Blair*, 524 F.3d at 748). As a corollary to the preceding, "[p]robable cause is [also] required for an investigatory stop for completed misdemeanor traffic violations." *Gregory v. Burnett*, 577 F. App'x 512, 516 (6th Cir. 2014); *see also United States v. Jeffries*, 457 F. App'x 471, 477 (6th Cir. 2012).[2] The traffic infraction in this case was a completed misdemeanor, as running a red light is a "minor misdemeanor" in Ohio. *See* Ohio Rev. Code § 4511.12. And here, by the time officers stopped Hutchins, the misdemeanor was complete—the SUV had run the red light, and Hutchins was stopped at a different red light when officers found him. The district court applied and the parties here have argued that probable cause applies. Whether we apply probable cause or some lesser standard, Hutchins' stop passes constitutional muster.

Probable cause "exists where the 'facts and circumstances' are 'sufficient to warrant a prudent person . . . in believing . . . that the suspect has committed, is committing, or is about to commit an offense.'" *Stevenson*, 43 F.4th at 645 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "It is a 'practical and common-sensical standard' based on 'the totality of the circumstances.'" *Id.* (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)). Even though probable cause requires more than a reasonable suspicion of criminal activity, it "is not a high bar." *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)).

Here, the officers were warranted in believing that Hutchins' SUV was the one that had committed the earlier traffic violation. The officers were aware that McGrath had observed a black

---

[2] We more recently revisited whether "the Fourth Amendment prohibit[s] officers from making a *Terry* stop to investigate" a completed misdemeanor in *United States v. Jones*, 953 F.3d 433, 436 (6th Cir. 2020). There, we determined that there is no universal prohibition and held that the question of whether it was reasonable to make a *Terry* stop to investigate a completed misdemeanor turned on the "facts and circumstances." *Id.* Under this case-by-case approach, we balance "the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." *Id.* Here, we need not resolve whether *Terry*'s reasonable suspicion standard applies or the higher probable-cause standard applies because, considering all the "facts and circumstances," we find that the stop passes muster under either standard.

Mercedes SUV speed through a red light. *See United States v. Townsend*, 330 F.3d 438, 440-41 (6th Cir 2003) (finding that one officer's personal observations and the collective knowledge doctrine are sufficient to justify an investigatory stop). And despite Hutchins' argument to the contrary, the officers had more to go on than just the description of the vehicle. They had geographic proximity; they spotted Hutchins' SUV only about a half-mile to a mile away from where McGrath observed the traffic violation. And they had temporal proximity; the officers spotted Hutchins' SUV only "moments"—less than five minutes by all accounts—after the traffic violation. The search for the SUV was dynamic. The officers lost sight of the vehicle for "just like mere moments," but caught up to it in short order. (R. 84, PageID 1073-1074). While the SUV was out of sight, officers in at least three different vehicles continuously looked for the SUV to reemerge. And when it did, they made the stop. Under the totality of these circumstances, the brief period that the officers lost sight of the SUV does not undermine the reasonableness of their belief that the car they stopped was the same car involved in the traffic violation. *See United States v. Atkins*, 513 F. App'x 577, 580–81 (6th Cir. 2013) (finding traffic stop justified where vehicle similar to the one that witnesses described was found near the crime scene and not long after the alleged crime occurred). Thus, suppression of the evidence seized during the stop was not warranted.

III.

Hutchins next challenges his sentence as both procedurally and substantively unreasonable. The Court reviews the procedural and substantive reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). However, when the district court provides an opportunity to raise procedural errors after pronouncing the sentence, and the appealing party fails to do so, as is the case here, the Court reviews for plain error. *United States*

*v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). Under plain-error review, Hutchins must show an "(1) error (2) that 'was obvious or clear,' (3) that 'affected [his] substantial rights[,]' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)). "Accordingly, plain error is a standard that is extremely deferential to the district court, and it should be found sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice." *United States v. Donadeo*, 910 F.3d 886, 893 (6th Cir. 2018) (citations and internal quotation marks omitted).

A.

*Procedural Reasonableness of Sentence.* Hutchins first argues that his sentence is procedurally unreasonable. Procedural reasonableness requires the district court to "properly calculate the [G]uidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (citing *Gall*, 552 U.S. at 51).

Hutchins argues that his sentence is procedurally unreasonable because the district court failed to state why it rejected his argument that his age supported a lower sentence. He also argues that the district court erred when it designated him as a career offender based on his 2002 Ohio drug conviction because "Ohio defines cocaine more broadly than federal law." (Dkt. 34, PageID 15.) These arguments are unavailing.

First, the district court did not commit any procedural error. While it is true that district courts must consider non-frivolous arguments, Hutchins did not argue that the court should consider his age as a mitigating factor. Instead, he merely told the district court that he had been

working as a porter, that "he [was] getting older," and that he was "trying to adjust." (R. 78, PageID 721). He did not argue that his age decreased his likelihood of reoffending. And when the district court asked him if he had any objection to his sentence, he did not assert that the court had failed to address some argument about his age. A district court does not err when it does not address an argument that a defendant fails to raise. And even if we construed Hutchins' passing reference to his age as an argument for a sentence reduction, his argument would still fail because district courts are not required to explicitly accept or reject all of a defendant's non-frivolous arguments—especially when those arguments are conceptually straightforward. *See United States v. Chiolo*, 643 F.3d 177, 184 (6th Cir. 2011). Here, the district court made note of Hutchins' age when discussing his personal characteristics and ultimately determined that his criminal history along with the fact that he had reoffended so soon after serving a relatively long sentence supported a sentence at the higher end of the Guidelines range. We find no plain error in this explanation.

Second, the district court did not err when it considered Hutchins' 2002 Ohio drug conviction a predicate offense to determine that he qualified as a career offender under the Guidelines. Typically, "[w]hether a prior conviction counts as a predicate offense under the Guidelines is a question of law subject to de novo review," *United States v. Havis*, 927 F.3d 382, 384 (6th Cir. 2019) (en banc) (per curiam), but because Hutchins did not raise this issue before the district court, we also review it for plain error, *see United States v. Williams*, 850 F. App'x 393, 395–96 (6th Cir. 2021). Under the Guidelines, a defendant is a career offender if, among other things, he has two or more prior felony convictions of either a crime of violence or a "controlled substance" offense. U.S.S.G. § 4B1.1(a). Here, Hutchins' 2002 Ohio drug conviction involved the preparation of cocaine for sale. He argues that, because federal law prohibits fewer forms of cocaine than Ohio law, this conviction should not count as a "controlled substance" under the

Guidelines. Or to be more technical, Hutchins argues that federal law prohibits only optical and geometric isomers of cocaine, whereas Ohio law prohibits all isomers of cocaine, including positional isomers. Thus, in Hutchins' view, because (1) "controlled substance" under the Guidelines only includes substances prohibited by federal law and (2) Ohio law sweeps more broadly than federal law, his Ohio conviction for preparation of cocaine is not a "controlled substance" conviction and thus, not a career-offender predicate.

Currently, circuit courts are divided on whether "controlled substance" under the Guidelines only refers to substances prohibited by federal law or substances prohibited by both federal and state law. *See United States v. Lewis*, 58 F.4th 764, 768–69 (3d Cir. 2023) (summarizing split). We have not yet reached an agreement on the issue. *Compare United States v. Williams*, 762 F. App'x 278, 281–82 (6th Cir. 2019) (providing that "controlled substance" in the Guidelines referred to federal drug schedule), *with United States v. Sheffey*, 818 F. App'x 513, 520 (6th Cir. 2020) (providing that "controlled substance" in the Guidelines includes substances prohibited by state law). However, because jurists disagree on the meaning of "controlled substance," an interpretation of that term to include substances prohibited under Ohio law is not plainly wrong. *See United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) ("A circuit split precludes a finding of plain error . . . . A lack of binding case law that answers the question presented will also preclude our finding of plain error." (citation and internal quotation marks omitted)). Thus, given the procedural posture, Hutchins is not entitled to relief on this claim of error.

B.

*Substantive Reasonableness of Sentence.* Hutchins also says that his sentence is too long— a challenge to its substantive reasonableness.

We give deference to the sentence that the district court fashioned for two reasons. First, as mentioned, our substantive reasonableness review is for abuse of discretion. *United States v. Wells*, 55 F.4th 1086, 1093 (6th Cir. 2022). Second, the fact that the district court sentenced Hutchins within the Guidelines range means his 327-month sentence is presumptively reasonable. *United States v. Morris*, 71 F.4th 475, 484 (6th Cir. 2023).

Hutchins lists several reasons that his sentence is substantively unreasonable. Citing a Sentencing Commission report, he argues that recidivism rates decline with age and that he was 43 years old at the time of sentencing. Hutchins also stresses that his career-offender predicates were old and implies that he should receive a shorter sentence than a career offender with fresh predicates. Finally, Hutchins says that for a few reasons, the career-offender Guideline is an ill fit for someone like him: an offender whose predicates were not violent and involved only a small amount of drugs. For instance, Hutchins says that the career-offender enhancement creates unwarranted sentencing disparities by subjecting those with predicates involving small quantities of drugs to the same Guidelines range as those with predicates involving large quantities of drugs. And he points out that the Sentencing Commission has recommended to Congress that the career-offender designation be amended to exclude those with drug-only predicates.

These points do not address the district court's reasons for imposing a within-Guidelines sentence. Moreover, it is not our role "to impose sentences in the first instance." *United States v. Paull*, 551 F.3d 516, 530 (6th Cir. 2009) (citation and internal quotation marks omitted). We are merely tasked with deciding whether the district court's "sentence conforms with the sentencing goals set forth in 18 U.S.C. § 3553(a)," including whether the district court arbitrarily decided on a sentence, based "the sentence on impermissible factors," failed "to consider relevant sentencing factors," or gave "an unreasonable amount of weight to any pertinent factor." *United States v.*

*Small*, 988 F.3d 241, 258–59 (6th Cir. 2021) (quoting *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)). Here, the district court considered the § 3553(a) factors, and we cannot say that its weighing of them was an abuse of discretion.

The first sentencing factor includes "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). On that front, the district court accurately explained that Hutchins had "a long [criminal] history both as a juvenile and as an adult." (R. 78, PageID 734.) Indeed, Hutchins' adult convictions include gambling, cocaine trafficking, theft, assaulting a correctional officer, preparation of cocaine for sale, burglary, and domestic violence.

A sentence should also reflect the "nature and circumstances of the offense" and "the seriousness of the offense." 18 U.S.C. § 3553(a)(1), (2). As relevant to these factors, the district court described Hutchins' offenses as "the most dangerous conduct we see in Cleveland, Akron, our urban areas in the Northern District." (R. 78, PageID 734.) We agree that Hutchins' offense was dangerous. He was found with a loaded firearm and fentanyl. The Sentencing Commission has provided that "[b]ecause of fentanyl's extreme potency, the risk of overdose death is great, particularly when the user is inexperienced or unaware of what substance he or she is using." U.S.S.G. App. C, Amendment 807 (Reason for Amendment) (eff. Nov. 1, 2018).

District courts are also to craft a sentence that is sufficient but not greater than necessary "to promote respect for the law," "to afford adequate deterrence," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). In this regard, the district court accurately noted that within months of serving 168 months (14 years) in prison, Hutchins committed the instant offenses. The district court expressed dismay that "168 months didn't cause [Hutchins] to modify his behavior." (R. 78, PageID 734.) Thus, while it may well be generally true that older, drug-trafficking offenders have a low risk of recidivism, the district court

appropriately focused on Hutchins' risk of recidivism. The district court reasonably concluded that since 168 months in prison apparently did not deter Hutchins from drug trafficking, a longer sentence was warranted.

On balance, we cannot say that the § 3553(a) factors so decidedly tilt toward a significantly shorter sentence that the district court's chosen sentence was an abuse of discretion. *See Rayyan*, 885 F.3d at 442 (providing that the weighing of the sentencing factors "is a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much") (citing *Gall*, 552 U.S. at 51). While Hutchins' arguments about being an older individual upon release, stale predicates, and the ill fit between the career-offender Guidelines and low-level drug dealers may favor a shorter sentence; the nature of his offense, his criminal history, and his return to criminal activity shortly after a long prison term lend support to the district court's sentence. Accordingly, Hutchins has not rebutted the presumption of reasonableness or otherwise shown that his sentence is substantively unreasonable.

IV.

For the reasons given, we **AFFIRM**.